Mulberry Hill Coal Company, Appellee, v. Illinois Central Railroad Company, Appellant.

1. RAILROADS—*section 84 of act providing for supplying of freight cars, etc., construed.* The jurisdiction of the interstate commerce commission is applicable peculiarly to unjust discrimination and excessive demands in the matter of freight rates. Its jurisdiction does not extend to a case where there has been a failure upon the part of a carrier to furnish cars for the shipment of freight. In such case section 84 of the Railroad Act applies and the jurisdiction of the courts of this state exists to enforce a demand for damages arising by reason of the carrier's failure to supply freight cars as required by law, even though the freight

cars in question were desired for use in connection with interstate commerce.

2. RAILROADS—*section 84 of act providing for supplying of freight cars, etc., construed.* A mine which has become a part of and appurtenant to a regular station of a railroad company by reason of being connected therewith by means of a switch track and course of dealing, is a station or stopping place within the meaning of section 84 of the Railroad Act.

3. RAILROADS—*section 84 of act providing for supplying of freight cars, etc., construed.* If the merchandise to be shipped is substantially ready for shipment at the time the order for cars is placed the statute is complied with and a failure to furnish the cars in question, as provided by the statute, confers a right of action upon the shipper.

4. RAILROADS—*section 84 of act providing for supplying of freight cars, etc., construed.* This section of the Railroad Act must be reasonably construed. It does not require that railroad companies should at all times and under all conditions have sufficient cars to take care of all demands, and it is error in an action to recover damages for the failure to furnish cars, to refuse to admit evidence which tends to show unusual demands at certain times, an equitable distribution of cars at such times, and to refuse to admit evidence which tends to show that the failure to supply was justified under all the facts and conditions existing at the time.

Action on the case. Appeal from the Circuit Court of St. Clair county; the Hon. GEORGE A. CROW, Judge, presiding. Heard in this court at the October term, 1910. Reversed and remanded. Opinion filed April 15, 1911. Rehearing denied May 19, 1911.

KRAMER, KRAMER & CAMPBELL, for appellant; JOHN G. DRENNAN, of counsel.

MILLER, WINKELMANN & OGLE, for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

This was an action on the case brought by appellee, the Mulberry Hill Coal Company, against appellant, Illinois Central Railroad Company, in the Circuit Court of St. Clair county, to recover damages by reason of the claimed failure of appellant to furnish coal cars at the coal mine of appellee, located on the railway

line of appellant, about a mile and a half northwest of the station of Freeburg in said county, as demanded by appellee. It is based upon section 84 of the Railroad Act (Revised Statutes, Hurd, 1908), requiring railroads in the state to furnish, start and run cars for the transportation of such passengers and property as shall within a reasonable time previous thereto be ready or be offered for transportation at the several stations on their lines, etc.

The declaration stated that appellee was the owner and engaged in the operation of a coal mine fully equipped with all the appliances necessary to the mining of coal and was possessed of a large amount of coal around and connected with said mine; that appellant was the owner of a railroad running from Freeburg to East St. Louis, on which was located the mine in question; that at said mine there was a switch connected with appellant's railroad, on which it was the custom of appellant to place empty coal cars for appellee to load the same from its mine, and when said cars were so loaded they were transported by appellant to East St. Louis and other points as directed by appellee's salesmen; that said mine was operated continuously from September 30, 1906, the time it was opened, to the time of the commencement of the suit, except upon such days as it remained idle on account of appellant's failure to furnish cars; that said mine had a capacity to produce coal, as fixed by appellant, from the time it began operations, until September 4, 1907, of 200 tons per day and from said latter date to the first day of November, 1907, of 425 tons per day; and from said last named date to December 23, 1907, of 525 tons per day; that when the mine was idle appellee incurred certain expenses, gauged somewhat by the capacity of the mine; that it was the legal duty of appellant, at places where freight was taken by it, to convey such freight when offered to it by persons ready and willing to pay compensation therefor.

The foregoing allegations of the declaration are all general and are followed by paragraph 1, which states that on January 10, 1907, appellee notified appellant it was ready, able and proposed to load 200 tons of coal on the 11th day of January, 1907, and needed appellant's coal cars in which to load the same; that it could have loaded said amount of coal if the cars had been furnished but that appellant failed to furnish the same and by reason thereof appellee's mine was idle and incurred an expense of $6.73, and lost the use of the mine on that day, the same being worth $15, in all the sum of $21.73. Paragraph No. 1 is succeeded by ninety-eight paragraphs of a similar nature but referring to different dates during the year 1907, the claim being that the mine remained idle for a total of ninety-nine days during said year.

The damages claimed in the declaration were $716.92 for expenses incurred while the mine was idle and $1,485 for the rental value of the mine during the same time, in all $2,201.92, for which amount the suit was brought.

A demurrer to the declaration was overruled and a trial had with a jury, resulting in a verdict in favor of appellee for $716.92, for which amount judgment was given.

The evidence on the part of appellee shows that at the place where the mine was located on appellant's railroad, there was no station nor was there a junction of appellant's road with any other railroad, nor was it a place established by appellant for receiving and discharging way passengers and freight; that no business was transacted with the railroad at that place except by appellee; that there were no switch tracks at the coal mine connected with appellant's railroad on which appellant placed empty coal cars to be loaded with coal from the mine; that it was customary, during the time in question, for appellee, at about 3 o'clock in the afternoon, to give appellant's

agent at Freeburg notice of the coal cars it would need on the following day; that at the time these notices were given none of the coal that appellee intended to ship in the cars demanded was hoisted from the mine ready to be loaded in cars and that some of it was not yet shot down.

The evidence on the part of appellant showed that it was a railroad company engaged in interstate commerce and that its lines of railway extended into a number of other states besides Illinois; that there are coal mines located on its lines in three states, the greater part of them being located in the state of Illinois; that during the time involved in this suit appellee shipped ninety-five per cent of the coal mined at its mine into other states than this, and that, if the cars demanded by it had been furnished, ninety-five per cent of the coal shipped in them would have gone to points in other states and off of the lines of appellant; that the coal mines located along appellant's lines were divided in divisions and its equipment for hauling coal was first divided among the divisions and afterwards distributed among the operators.

Appellant first contends that a motion made by it at the close of all the evidence to dismiss said cause for want of jurisdiction in the court, which was denied, should have been sustained.

Appellant's motion to dismiss the cause for want of jurisdiction was based upon the theory that, as a very large proportion of the cars ordered by appellee were intended to be used in transporting coal to points outside of this state, commerce between the states was involved and that under the act of Congress regulating such commerce the courts have no jurisdiction until the Interstate Commerce Commission has acted upon the matter. Section 15 of the Federal Act to regulate commerce, of 1906, relied on by appellee, provides, among other things, that

whenever the commission, upon hearing of a complaint, "shall be of the opinion that any of the rates of charges whatsoever demanded, charged or collected by any common carrier or carriers subject to the provisions of this Act for the transportation of persons or property as defined in the first section of this Act, or that any regulations or practices whatsoever of such carrier or carriers affecting such rates are unjust or unreasonable or unjustly discriminatory or unduly preferential or prejudicial or otherwise in violation of the provisions of this Act, to determine and prescribe what will be the just and reasonable rate or rates, charge or charges to be thereafter observed in such case as the maximum to be charged; and what regulation or practice in respect to such transportation is just, fair and reasonable to be thereafter followed."

A number of authorities have been submitted by appellant upon this question, but upon careful examination they do not appear to us to sustain the theory advanced by it.

B. & O. R. R. Co. v. U. S. ex rel. etc., 215 U. S. 481, was a case which involved the legality of regulations adopted by the railroad company for the distribution of cars to coal mines along the line of its road in case of car shortage, the coal company, a shipper, averring that discrimination had been made in the distribution of coal cars by the railroad company. It was there held by the court that the distribution to shippers of coal cars, including those owned by the shippers and those used by the carrier for its own fuel, involved preference and discrimination and was therefore a matter for consideration by the Interstate Commerce Commission and that the courts could not interfere with such regulations until after action thereon by the commission.

The same court, in the case of Interstate Commerce Com. v. I. C. R. R. Co., 215 *id.* 452, declared that un-

278    APPELLATE COURTS OF ILLINOIS.

Mulberry Hill Coal Co. v. Illinois Central R. R. Co., 161 Ill. App. 272.

der said section No. 15 the Interstate Commerce Commission has power to deal with preferential and discriminatory regulation of carriers, as well as with rates, and that it is not beyond the power of said commission to require a railroad, in distributing its coal cars, to take into account its own fuel cars in order not to create a preference in favor of the mine to which such cars are assigned over other mines.

In the case of St. L. S. W. Ry. Co. v. Arkansas, 217 *id.* 136, the question involved was the alleged exaction by the railroad of an unjust and unreasonable rate constituting discrimination and undue preference, amounting to charging more for a shorter than for a longer haul, and it was there said that this question was one to be passed upon by the Interstate Commerce Commission.

The United States Circuit Court for the Eastern District of Pennsylvania, in the case of Morrisdale Coal Co. v. Penn. R. R. Co., 176 Fed. Rep. 748, where the coal company complained of the method of distribution of coal cars among the mines of a certain region, adopted by the railroad company, and averred that undue preference was thereby given to other mines and shippers, held that, as such discrimination was applicable to a class of shippers and not to the plaintiff alone, the Interstate Commerce Commission had exclusive original jurisdiction to afford relief.

It will be readily observed that all these cases involved questions either affecting freight rates alleged to have been unreasonably or unjustly discriminatory, or regulations which were said to give undue preference or to be discriminatory. This suit, however, is not brought by appellee for the purpose of recovering damages on account of any unjust discrimination or preference on the part of appellant in distributing its coal cars, but to recover for losses sustained by it in being compelled to keep its mine idle on account of the failure of appellant, as alleged, to furnish

coal cars to it in compliance with the section of the Railroad Act of this state above referred to. The Interstate Commerce Commission itself has given a very clear statement of its interpretation of that portion of the Federal Act under consideration here, in the case of Richmond Elevator Co. v. Pere Marquette R. R. Co., 10 Interstate Commerce Rep. 629, where it is said: ''The Act to regulate commerce contains no provision which expressly or by proper implication gives this commission jurisdiction in cases merely showing delay or negligence in the receipt, forwarding or delivery of property offered for transportation, and this necessarily includes failure on the part of the carrier to furnish cars for the movement of freight within a reasonable time. The regulating statute does, however, prohibit any unjust discrimination or wrongful prejudice in the provision of cars or other transportation facilities, as well as in the fixing and application of transportation charges. * * * Every shipper is entitled to fair opportunity and treatment in the use of these public utilities and any discrimination which in substantial degree deprives shippers of such use must be considered unjust unless forced by justifying conditions.''

Under this construction of the act, placed upon it by the commissioners, which appears to us to be eminently sound, it seems to follow naturally that the claim of appellant that the state court had no jurisdiction, for the reason that it was a matter to be first submitted to the Interstate Commerce Commission, must fail.

The next statement of appellant is that no duty of appellant to furnish coal cars to appellee at its mine arises under section 84 of the Railroad Act. That section provides: ''Every railroad corporation in the state shall furnish, start and run cars, for the transportation of such passengers and property, as shall within a reasonable time previous thereto, be ready

or be offered for transportation at the several stations on its railroad, and at the junctions of other railroads and at such stopping places, as may be established for receiving and discharging way passengers and freights, and shall take, receive, transport and discharge such passengers and property at, from and to such stations, junctions and places on and from all trains advertised to stop at the same for passengers and freight respectively."

The claim of appellant is that the statute can have no application because the coal mine of appellee is not located at a station on appellant's railroad nor at a junction of the same with another railroad, nor at a stopping place established by appellant for receiving and discharging way passengers and freight, and is not a place at which trains are advertised to stop. This claim of appellant is strictly correct but a reasonable interpretation must be given the law. The mine is located only about a mile and a half from the station of Freeburg and all business of shipping was done by appellee with the agent of appellant at that place and the billing was made out by or under the direction of such agent. Appellant itself had recognized the mine as a stopping place by putting in the switch connecting its track with the mine and had received freight there to be forwarded for a considerable length of time. The course of business between appellee and appellant was really the same as though the mine had been actually located at the station in Freeburg. We are of opinion that under the circumstances the mine must properly be considered as a part of or appurtenant to the station of Freeburg and that it is therefore a station or stopping place within the meaning of the statute. In this connection it is also pertinent to call attention to section 5 of article 13 of the constitution of this state, which provides that "all railroad companies shall permit connections to be made with their tracks so that any

such consignee (of grain), and any public warehouse, coal bank or coal yard may be reached by the cars on said railroad." This provision of the constitution was under consideration in C. & A. R. R. Co. v Suffern, 129 Ill. 274, and it was there said in reference thereto: "It was the evident design of the constitutional provision above quoted to compel the railroads to furnish the coal mines in the state with all necessary facilities for the shipment and transportation of coal."

The next contention of appellant is that even if said section of our Railroad Act in relation to furnishing cars does apply to appellee's mine, the undisputed evidence shows that at the time appellee made its demand for cars it did not have its coal ready for shipment. In this connection appellant's further claim is that the evidence shows that at the time the demands for cars were made some of the coal intended to be shipped was loaded in pit cars and at the shaft bottom but the greater portion of it was yet in the rooms and some of it was still in the ground and had to be shot down, loaded in the cars, transported to the shaft bottom and hoisted, before it was ready for shipment. This court has held that the language "as shall, within a reasonable time previous thereto, be ready or be offered for transportation," as used in the act under consideration, cannot be extended so as to include coal in the earth to be dug and raised from the mine after cars are furnished. I. & St. L. R. R. Co. v. People, 19 Ill. App. 141. It appears, however, in this case that by far the greater portion of the coal, for the shipment of which appellee ordered cars of appellant, was already shot down or mined from the ground and we are inclined to think it a fair inference from the evidence that at the time the cars were ordered to be delivered, that is on the day following the order, the amount that would have remained to be mined for such shipment, if any, was

inconsequential.    This objection of appellant, there-
fore, does not appear to us to be well taken.

Appellant further complains because appellee in its
demands for the cars in question, did not show that it
desired them for shipping coal to points beyond its
lines, which it claims appears to be the fact, as shown
by the evidence in the case.    There is nothing in the
section of our railroad law under consideration which
required appellee to state that it desired the cars for
shipment to points beyond or off appellant's lines in
case cars ordered were so destined.    Nor does it ap-
pear to us that such a statement should necessarily be
made in such notice.    The billing of the cars was a
matter to be considered later, and if special contract
were necessary before appellant could be required to
carry the coal beyond its own lines, that was a matter
which could be arranged for at the time of the billing.

A question for serious consideration concerns the
refusal of the court to admit certain evidence offered
by appellant.    In the course of the trial appellant of-
fered to prove that during the time in question it made
an equitable and fair division of its equipment avail-
able for hauling coal among the various divisions on
its lines according to the capacity of the mines in
such division and afterwards distributed  the same
among the operators of mines located in each division
fairly and equitably, according to the capacity of said
mines, but the court sustained an objection of appellee
to this evidence and refused to admit it.

Appellant also offered to prove that there are times
in the operation of its road when it does not have a
sufficient amount of coal cars to supply the demand of
all the operators along its lines, and that there are
other times when it has a surplus of cars in excess of
the demands of such operators; that during the year
1907 it did not have a sufficient supply of such cars
to satisfy all the demands of said operators, but that
during the entire year of 1908 and nearly all of the

year 1909 it had a large surplus of coal cars above the demands of such operators, averaging 5,913 cars per day which were idle; that during the year 1907 appellee received its fair and just proportion of the cars, and during all the year 1908 and the greater portion of the year 1909 it had more cars than it needed.

To all this evidence appellee also objected, the objection was sustained and the offered evidence refused by the court.

As bearing upon the same question, the court instructed the jury on behalf of appellee that it was the duty of appellant to provide sufficient facilities for the transportation of goods such as coal; that it must furnish cars sufficient to transport goods offered in the usual and ordinary course of business, on reasonable previous notice being given to the company of the demand for cars, and reasonable time given the company after such notice received by it; and that a failure of the company to furnish such cars made it liable to the shipper if he was damaged thereby. The statute under which this suit is brought must receive a reasonable construction and what is reasonable must in the very nature of things, depend to some extent, at least, upon the circumstances attending the neglect or refusal to furnish cars on demand. The words of the statute are: "Every railroad corporation in the state shall furnish, start and run cars, for the transportation of such passengers and property as shall within a reasonable time previous thereto be ready or be offered for transportation at the several stations on its railroad," etc.

It is evident that a railroad company could not at all times and under all circumstances comply literally with the terms of this law. It might well be that accident over which the company had no control would prevent the company, although it had plenty of coal cars at its command, to furnish the same to a coal mine within a period which under ordinary circumstances

would be a reasonable time after notice; or a sudden and extraordinary call for cars might be made, or business might increase along its lines at a more rapid rate than it could obtain cars to supply the demand, and delay and inconvenience be caused thereby. Before a railroad company could properly be held liable for damages, under this law, occasioned by a failure to furnish cars, it should be given the opportunity of showing, if it so desires and could produce such evidence, proof that reasons existed without its fault by which a compliance with such rule was rendered impossible or wholly unreasonable. These questions are questions of fact or possibly mixed questions of law and fact. The evidence above referred to as sought to be introduced by appellant had some bearing upon the question as to whether appellant could in the ordinary course of business have reasonably furnished all the coal cars for which demand was made upon it by appellee within a reasonable time after such demand, and the court erred in refusing to admit the same. For the errors in refusing to admit the evidence above referred to, the judgment of the Circuit Court will be reversed and the cause remanded.

*Reversed and remanded.*