## ILLINOIS CENTRAL RAILROAD COMPANY *v.* MULBERRY HILL COAL COMPANY.

ERROR TO THE SUPREME COURT OF THE STATE OF ILLINOIS.

No. 118.   Argued January 14, 1915.—Decided June 14, 1915.

A state statute which merely requires a railroad company to furnish cars within a reasonable time after demand made for them, is not such a direct burden upon interstate commerce, as to be void in the absence of legislation on the subject by Congress; and so *held* as to ch. 114, § 84, Rev. Stat. Illinois, 1913.

Whether such a statute, valid when enacted, became an unconstitutional burden on interstate commerce on the enactment of the amendment of the Interstate Commerce Act, not now decided as that point was not raised in either of the state courts.

The state courts have jurisdiction of a case for damages against a carrier for failure to deliver cars in accordance with its own rules for distribution, where the rule itself is not attacked but discrimination against plaintiff notwithstanding the rule is the basis of the suit. *Penna. R. R.* v. *Puritan Coal Co.*, 237 U. S. 121.

While the amendment of 1906 to the Interstate Commerce Act gave new rights to shippers, it preserved existing rights and did not supersede the jurisdiction of the state courts in any case, new or old, where the decision did not involve the determination of matters calling for the exercise of administrative power and discretion of the Commission or relate to a subject as to which the jurisdiction of the Federal courts had otherwise been made exclusive. *Id.*

257 Illinois, 80, affirmed.

THE facts, which involve the liability of a carrier for failure to furnish cars to a coal mining corporation located on its line, are stated in the opinion.

*Mr. Blewett Lee,* with whom *Mr. Edward C. Kramer, Mr. John G. Drennan* and *Mr. Walter S. Horton* were on the brief, for plaintiff in error:

The case should have been dismissed for want of jurisdiction. Congress has preëmpted the field. The reason-

ableness of carriers' practices is for the Commission, especially in cases of discrimination, or of inadequacy of carriers' total car supply. There is conflict between state and Federal rules as to duty of supplying cars.

The Illinois statute as applied to interstate commerce is unconstitutional. The subject has been withdrawn from state authority.

In support of these contentions, see *Balt. & Ohio R. R.* v. *Pitcairn Coal Co.*, 215 U. S. 481; *Carondelet Canal Co.* v. *Louisiana*, 233 U. S. 362; *Chapman* v. *Goodnow's Admr.*, 123 U. S. 540; *Chicago, R. I. & P. Ry.* v. *Hardwick Elevator*, 226 U. S. 426; *Hillsdale Coal Co.* v. *Penna. R. R.*, 23 I. C. C. 186; *Ill. Cent. R. R.* v. *Mulberry Hill Coal Co.*, 161 Ill. App. 272; *S. C.*, 257 Illinois, 80; *Ill. Cent. R. R.* v. *River Coal Co.*, 150 Kentucky, 489; *In re Irregularities in Mine Ratings*, 25 I. C. C. 286; *Int. Com. Comm.* v. *Ill. Cent. R. R.*, 215 U. S. 452; *Jacoby* v. *Penna. R. R.*, 200 Fed. Rep. 989; *Logan Coal Co.* v. *Penna. R. R.*, 154 Fed. Rep. 497; *Louis. & Nash. R. R.* v. *Cook Brewing Co.*, 223 U. S. 70; *Mitchell Coal Co.* v. *Penna. R. R.*, 230 U. S. 247; *Montana W. & L. Co.* v. *Morley*, 198 Fed. Rep. 998; *Morrisdale Coal Co.* v. *Penna. R. R.*, 230 U. S. 304; *Penna. R. R.* v. *International Coal Co.*, 230 U. S. 184; *St. L., I. M. & S. Ry.* v. *Edwards*, 227 U. S. 265; *St. L., S. W. Ry.* v. *Arkansas*, 217 U. S. 136; *Southern Ry.* v. *Reid*, 222 U. S. 424; *Southern Ry.* v. *Reid & Beam*, 222 U. S. 444; *Tex. & Pac. Ry.* v. *Abilene Cotton Co.*, 204 U. S. 426; *Traer* v. *Chi. & Alton R. R.*, 13 I. C. C. 451; *United States* v. *Pacific & Arctic Co.*, 228 U. S. 87; *Yazoo & Miss. Valley R. R.* v. *Greenwood Grocery Co.*, 227 U. S. 1.

*Mr. Frederick B. Merrills* for defendant in error.

MR. JUSTICE PITNEY delivered the opinion of the court.

This was an action brought by defendant in error against plaintiff in error to recover damages for the alleged failure

of the latter to furnish coal cars at plaintiff's mine, located upon the line of defendant's railroad, pursuant to plaintiff's requirements and demands. It was founded upon § 22 of an act of March 31, 1874, in relation to fencing and operating railroads, as amended (Hurd's Rev. Stat. Illinois, 1913, c. 114, § 84, p. 1955). The declaration set forth that plaintiff was the owner of and engaged in operating a coal mine equipped with appliances necessary for the mining of coal, and was possessed of a large amount of coal at the mine; that defendant was the owner of the railroad upon which the mine was located, there being a switch at the mine, etc., and that on certain specified days in the year 1907 plaintiff notified defendant that it was ready and proposed to load certain specified quantities of coal, and needed defendant's cars in which to load it, and that defendant failed to furnish the cars, and by reason thereof plaintiff sustained damages. The plea was the general issue. There was a trial by jury, at which evidence was given tending to prove the averments of the declaration. Defendant's evidence showed that it was engaged in interstate commerce, having lines of railway extending to other States besides Illinois, with coal mines located upon its lines in three States, the greater part of them being in Illinois; that during the time covered by the action plaintiff shipped 95% of its coal into States other than Illinois, and that if the cars demanded by it had been furnished 95% of the coal shipped in them would have gone to points in other States and off the lines of defendant; and that the coal mines located along defendant's line were divided into divisions, and its equipment for hauling coal was first divided among the divisions and afterwards distributed among the coal operators. There was also evidence of a general shortage of coal cars upon the Illinois Central lines during the year 1907; but the reason for this was not clearly shown, and it did not appear that it was attributable to any sudden emergency or to other causes

beyond the control of the carrier. Defendant introduced in evidence its established rules governing the distribution of coal cars during the period covered by the suit, and there was evidence tending to show that these were followed. But it cannot be said that this was conclusive, and it was distinctly negatived by the finding of the jury.

A verdict was rendered in favor of plaintiff, which by remittitur was reduced to $716.92. The resulting judgment was affirmed by the Supreme Court of Illinois (257 Illinois, 80), and the case comes here upon questions raised under the Commerce Clause of the Constitution of the United States and the Act to Regulate Commerce.

1. The fundamental Federal question, and the only one with which the state Supreme Court dealt, is whether the Illinois statute is a direct burden upon interstate commerce and therefore repugnant to the Commerce Clause, irrespective of Congressional action. This was raised by a motion to dismiss and a motion for the direction of a verdict in favor of defendant. The statute, so far as now pertinent, is as follows:

"Every railroad corporation in the State shall furnish, start and run cars for the transportation of such passengers and property as shall, within a reasonable time previous thereto, be ready or be offered for transportation at the several stations on its railroads and at the junctions of other railroads, and at such stopping places as may be established for receiving and discharging way-passengers and freights; and shall take, receive, transport and discharge such passengers and property, at, from and to such stations, junctions and places, on and from all trains advertised to stop at the same for passengers and freight, respectively, upon the due payment, or tender of payment of tolls, freight, or fare legally authorized therefor, if payment shall be demanded, etc."

The Illinois Supreme Court construed it as follows: "The only requirement of the statute, as applied in this

case or any other case, is, that the railroad corporation shall furnish cars, within a reasonable time after they are required, to transport the property offered for transportation, and what would be a reasonable time in any case would depend upon all the circumstances and conditions existing, including the requirements of the interstate commerce carried on by the corporation."

In that court, *Houston & Tex. Cent. Railroad* v. *Mayes,* 201 U. S. 321, 329, and *St. Louis S. W. Ry.* ∨. *Arkansas,* 217 U. S. 136, 149, were cited. In the first of these, the state law absolutely required that a railroad should furnish a certain number of cars at a specified day, regardless of every other consideration except strikes and other public calamities, making no exception in cases of a sudden congestion of traffic, an actual inability to furnish cars by reason of their temporary and unavoidable detention in other States or in other places within the same State, or any allowance for interference with traffic occasioned by wrecks or other accidents upon the same or other roads; and for any dereliction of the carrier, owing perhaps to circumstances beyond its control, it was made answerable not only to the extent of the damages incurred by the shipper, but in addition to an arbitrary penalty of $25 per car for each day of detention. In the *Arkansas Case,* the rule of the state railroad commission, as applied by the state court, penalized the carrier for delivering its cars to other roads for the movement of interstate commerce pursuant to the regulations of the American Railway Association, because, as the state court concluded, these regulations, although governing ninety per centum of the railroads in the United States, were inefficient and should be disregarded. This court held (p. 149) that the rule of the state court "involved necessarily the assertion of power in the State to absolutely forbid the efficacious carrying on of interstate commerce, or, what is equivalent thereto, to cause the right to efficiently conduct such

commerce to depend upon the willingness of the company
to be subjected to enormous pecuniary penalties as a con-
dition to the exercise of the right."

The statute now in question merely requires a railroad
company to furnish cars within a reasonable time after
demand made for them, and the question, What is a
reasonable time? is to be determined in view of the re-
quirements of interstate commerce. That the operation
of the statute is thus limited in practice and not merely
in theory is shown by the history of the case at bar. Upon
a former trial there was a verdict for the plaintiff, and the
resulting judgment came under the review of the appellate
court (161 Ill. App. 272), which, while ruling in favor of
the plaintiff upon the main questions, reversed the judg-
ment and awarded a new trial (p. 282) because of the re-
jection of evidence offered by the defendant to show that
there were times when it had not a sufficient amount of
coal cars to supply the demand of all the operators along
its lines, that this was the case during the year 1907, and
that during this year plaintiff received its fair and just
proportion of the cars.

We agree with the conclusion reached by the state court
that the Illinois statute is not a direct burden upon inter-
state commerce, so as to be void in the absence of legisla-
tion by Congress.

2. It is here insisted that by reason of the provisions
of the Federal Act to Regulate Commerce and amend-
ments (c. 104, 24 Stat. 379; c. 3591, 34 Stat. 584; etc.)
the state law, however valid when originally enacted, has
become an unconstitutional regulation when applied, as
in the present case, to interstate transactions. Reference
is made to § 1 of the Act, as amended in 1906 (c. 3591, 34
Stat. 584), which provides: "And the term 'transporta-
tion' shall include cars and other vehicles and all instru-
mentalities and facilities of shipment or carriage . . . ;
and it shall be the duty of every carrier subject to the

provisions of this Act to provide and furnish such transportation upon reasonable request therefor." *Chi., R. I. &c. Ry.* v. *Hardwick Elevator Co.*, 226 U. S. 426, 435; *St. Louis, Iron Mtn. & S. Ry.* v. *Edwards*, 227 U. S. 265; *Yazoo & Miss. R. R.* v. *Greenwood Gro. Co.*, 227 U. S. 1, and other cases of that class, are cited, to which may be added *Charleston & West. Car. Ry. Co.* v. *Varnville Furniture Co.*, decided June 1, 1915, 237 U. S. 597.

As to this point, it is sufficient to say that no such question was raised in either of the state courts. Indeed, after the denial of the motion to dismiss and the motion to direct a verdict, defendant requested, and the trial court gave to the jury, an instruction setting forth almost *in haec verba* the requirements of the state statute, and declaring "that no other or greater duty devolves upon railroad companies to receive and transport freight than mentioned in the statute."

3. The trial court overruled a motion, made by defendant at the close of the evidence, to dismiss the suit for want of jurisdiction: (a) because the cars demanded were to be used in interstate traffic; and (b) because the action involved defendant's duty to deliver cars during a period of time when there was a car shortage, and when plaintiff, and also the other coal operators, were shipping the greater portion of their coal in interstate commerce, and therefore the suit involved a question of the proper method of car distribution for interstate commerce at a time of shortage, authority over which question was vested in the Interstate Commerce Commission, and until that Commission had acted the court was without jurisdiction. The denial of this motion is insisted upon as error; but, under the facts of the case, the ruling is clearly sustained by our recent decision in *Penna. R. R.* v. *Puritan Coal Co.*, 237 U. S. 121. In that case, as in this, an interstate carrier was sued in a state court for damages caused by its failure to furnish a shipper with cars in which to load coal for shipment to

points within and without the State; the pleadings alleged
that the carrier failed to perform its duty to furnish cars,
and also that in violation of a state statute it unjustly
discriminated against the shipper by failing to distribute
cars in accordance with the carrier's own rule applicable
in time of shortage. A judgment having been rendered
for damages caused by the unjust discrimination in the
distribution of cars, the carrier brought the case here, in-
sisting (1) that the determination of the proper basis for
the distribution of cars was a matter calling for the exer-
cise of the administrative power of the Interstate Com-
merce Commission; (2) that no court had jurisdiction of
an action for discriminatory allotment until after the com-
mission had determined that the established rule for dis-
tribution was improper; and (3) that no suit could be
brought against an interstate carrier for damages occa-
sioned by a failure to deliver cars or for an unjust dis-
crimination in distribution except in a court of the United
States. Upon a review of §§ 8 and 9 of the Act to Regulate
Commerce and of the proviso in § 22 which declares that
"nothing in this act contained shall in any way abridge
or alter the remedies now existing at common law or by
statute, but the provisions of this act are in addition to
such remedies," we held (p. 130) that while the Act gave
shippers new rights, it at the same time preserved existing
causes of action; that it did not supersede the jurisdiction
of state courts in any case, new or old, where the decision
did not involve the determination of matters calling for
the exercise of the administrative power and discretion
of the Commission or relate to a subject as to which the
jurisdiction of the Federal courts had otherwise been made
exclusive; that in actions against railroad companies for
unjust discrimination in interstate commerce where the
rule of distribution itself is attacked as unfair or dis-
criminatory, a question is raised which calls for the exer-
cise of the authority of the Interstate Commerce Com-

mission; but if the action is based upon a violation or discriminatory enforcement of the carrier's own rule for car distribution no administrative question is involved, and such an action, although brought against an interstate carrier for damages arising in interstate commerce, may be prosecuted either in the state or the Federal courts. And because in that case the action was not based upon the ground that the carrier's rule of car distribution was unreasonable or discriminatory, but that plaintiff was damaged by reason of the carrier's failure to furnish it with cars to which it was entitled even upon the basis of the carrier's own rule of distribution, it was held that the state court had jurisdiction without previous application to the Interstate Commerce Commission.

It is true that the *Puritan Case* arose before the passage of the Hepburn Act of 1906; but there is nothing in. the amendments introduced by that Act to affect the jurisdiction of the state court in an action such as the present.

In this case, plaintiff made no attack whatever upon defendant's rules for car distribution. The declaration, indeed, is based wholly upon the statute, and contains no averment of discrimination. It was defendant that endeavored to import the question of car distribution into the case, by introducing the evidence above referred to, and by requesting an instruction (which the court accordingly gave) to the effect that if defendant had not and could not procure sufficient coal cars to furnish all of the operators on its lines with all the cars desired and demanded by them, and did fairly and equitably distribute its available cars among the operators, it discharged its whole duty to plaintiff. But the verdict of the jury in favor of plaintiff negatived the hypothesis of fact upon which this and another like instruction were based.

*Judgment affirmed.*