# Langhill *v.* The Pennsylvania Railroad Company, Appellant.

*Common carriers—Railroad companies — Discrimination — Side tracks—Interstate Commerce Act of Feb. 4, 1887, c. 104, 24 U. S. Stat. 379, secs. 3, 8 and 9—Act of June 4, 1883, P. L. 72—Construction—Intention.*

1. Sections 8, 9 and 22 of the Interstate Commerce Act relating to unlawful discrimination, construed with the statute as a whole, show that the act was both declaratory and creative. It gave shippers new rights, while at the same time preserving existing causes of action; it did not supersede the jurisdiction of state courts in any case new or old where the decision did not involve the determination of matters calling for the exercise of administrative power and discretion of the commission, or relate to a subject as to which the jurisdiction of the Federal Court had been otherwise made exclusive.

2. There are two forms of discrimination, one in the rule and the other in the manner of its enforcement; one in promulgating a discriminatory rule, the other in the unfair enforcement of a reasonable rule. In a suit where the rule of practice itself is attacked as unfair and discriminatory, a question is raised which calls for the exercise of judgment and discretion of the administrative power which has been vested by congress in the Interstate Commerce Commission; until that body has declared the practice to be discriminatory and unjust no court has jurisdiction of a suit against an interstate carrier for damages occasioned by its enforcement. But if the carrier's rule, fair on its face has been unequally applied, and the suit is for damages occasioned by its violation or discriminatory enforcement, there is no administrative question involved, the court being called on to decide a mere question of fact, as to whether the carrier has violated the rule to plaintiff's damage; such suit though against the carrier for damages arising in interstate commerce, may be prosecuted either in a State or Federal Court.

3. Where a railroad company has refused the application of a shipper for switching facilities, thereby violating the provisions of the federal and state acts relating to unlawful discrimination the statute of limitations commences to run from the date of the refusal of the application, not from the date when the application was made.

4. In an action against a railroad company for unlawful dis-

crimination in refusing to grant plaintiff's request for a switch connection for a mine while such facilities had been granted to other and competing mines under like conditions, where it appeared that the railroad company had never adopted any rule for governing the regulation of the distribution of such facilities, so that it was not the violation of a rule which was complained of, but the arbitrary and unjust denial of a right given by statute, the case was for the jury and a verdict and judgment for plaintiff was sustained: Puritan Coal Mining Co. v. Penna. R. R. Co., 237 Pa. 420, followed.

Argued Sept. 27, 1915. Appeal, No. 148, Oct. T., 1915, by defendant from judgment of C. P. Cambria Co., June T., 1909, No. 580, on verdict for plaintiff, in case of E. R. Langill and G. A. Edmiston, trading as Langill & Edmiston, v. The Pennsylvania Railroad Company. Before BROWN, C. J., MESTREZAT, POTTER, STEWART, MOSCHZISKER and FRAZER, JJ. Affirmed.

Trespass to recover damages for unlawful discrimination in failing to furnish plaintiff with proper switching facilities. Before O'CONNOR, J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $11,686.96 and judgment thereon. Defendant appealed.

*Errors assigned* were answers to points and instructions to the jury.

*Henry Wolf Bikle,* with him *H. W. Storey, Jr.,* and *Francis I. Gowen,* for appellant.—The lower court had no jurisdiction to entertain the action.

The plaintiff should have applied to the Interstate Commerce Commission: Chicago, Rock Island & Pac. Ry. Co. v. Hardwick Farmers' Elevator Co., 226 U. S. 426; Erie R. R. Co. v. New York, 233 U. S. 671; New York Central & Hudson River R. R. Co. v. Board of Chosen Freeholders of the County of Hudson, 227 U. S. 248; Northern Pacific Ry. Co. v. State of Washington,

222 U. S. 370; Penna. R. R. Co. v. International Coal Mining Co., 230 U. S. 184; Texas & Pacific Ry. Co. v. Abilene Cotton Oil Co., 204 U. S. 426; Baltimore & Ohio R. R. Co. v. U. S., ex rel., Pitcairn Coal Co., 215 U. S. 481; Robison v. Baltimore & Ohio R. R. Co., 222 U S. 506; Morrisdale Coal Co. v. Penna. R. R. Co., 230 U. S. 304; Penna. R. R. Co. v. Clark Brothers Coal Mining Co., 238 U. S. 456.

The statute of limitations was a bar to the plaintiff's recovery.

*Philip H. Shettig,* with him *Edward T. McNeelis* and *M. D. Kittell,* for appellees.—The Interstate Commerce Act does not disturb the jurisdiction of the State court over an action such as that at bar; the common law remedies reserved to shippers by the original Interstate Commerce Act are still in force: U. S. v. Balto. & Ohio R. R. Co., 153 Fed. Repr. 997; Puritan Coal Mining Co. v. Penna. R. R. Co., 237 Pa. 420.

OPINION BY MR. JUSTICE STEWART, May 23, 1916:

The plaintiffs were the owners and operators of a certain coal mine in Cambria County, located about one hundred feet from the main track of the plaintiff company's railroad, and something less than a half mile from the nearest railroad station. In their statement of claim they define their cause of action to be the refusal of the railroad company to grant their request for a switch connection for a side track to extend from their mine to the tracks of the railroad, to facilitate the shipment of coal, while such facilities had been granted to other and competing mines under like conditions. The claim was based on alleged unjust and unfair discrimination in the particular indicated. The action was brought in the Common Pleas of Cambria County, and the trial resulted in a verdict for the plaintiff for $11,686.96. Judgment having been entered on the verdict this appeal followed. In considering the several assignments of error we shall

observe the order adopted by counsel for appellant in
their discussion of them, and confine ourselves to the
consideration of such assignments as are pressed in the
brief submitted.  It may be conceded that the facts set
out in the plaintiff's claim would, if established, afford
a sufficient basis for invoking the remedies provided by
the Interstate Commerce Act of Feb. 4, 1887, c. 104, 24
U. S. Stat. 379, as amended by the Act of June 29, 1906,
c. 3591, 34 U. S. Stat. 584.  By Section 3 of the act every
unreasonable preference or advantage to any particular
person, company, or firm, is forbidden.  Section 1 of the
act provides that "Any common carrier subject to the
provisions of this act, upon application of any lateral
branch line of railroad, or of any shipper tendering in-
terstate traffic for transportation, shall construct, main-
tain, and operate upon reasonable terms a switch con-
nection with any such lateral, branch line of railroad, or
private side track which may be constructed to connect
with its railroad, where such connection is reasonably
practical and can be put in with safety, and will furnish
sufficient business to justify the construction and main-
tenance of the same; and shall furnish cars for the move-
ment of such traffic to the best of its ability without dis-
crimination in favor of or against such shipper.  If any
common carrier shall fail to install and operate any such
switch or connection as aforesaid, on application there-
for in writing by any shipper or owner of such lateral
branch line of railroad, such shipper or owner of such
lateral branch line of railroad, may make complaint to
the commission as provided in Section thirteen of this
act, and the commission shall hear and investigate the
same and shall determine as to the safety and practica-
bility thereof and justification and reasonable compen-
sation therefor, and the commission may make an order,
as provided in Section fifteen of this act, directing the
common carrier to comply with the provisions of this
section in accordance with such order, and such order
shall be enforced as hereinafter provided for the enforce-

ment of all others by the commission, other than orders for the payment of money." This much being conceded it is the contention on part of the appellant that to the particular remedy provided in this Federal act the plaintiffs were confined, inasmuch as by the act the Federal courts are invested with exclusive jurisdiction in such cases.

It must be conceded as well, accepting the facts to be as found by the jury, that they constitute an offense against the State statute of June 4, 1883, P. L. 72, which provides in Section 1 "That any undue or unreasonable discrimination by any railroad company or other common carrier, or any officer, superintendent, manager, or agent thereof, in charges for or in facilities for the transportation of freight within this State or coming from or going to any other state, is hereby declared to be unlawful." In Section 2 of this act it is provided that, "Any violation of this provision shall make the offending company or common carrier liable to the party injured, for damages treble the amount of injuries suffered." It is the appellant's contention that the injured party in such case can look for redress only to the Federal tribunals, for the reason that exclusive jurisdiction is by the act conferred on such courts. The refusal of the court to so hold is appellant's chief complaint. The effort here made is to distinguish the present case from the case of Puritan Coal Mining Co. v. Penna. R. R. Co., 237 Pa. 420, in which it was held that notwithstanding unjust discrimination in the furnishing of cars was made an offense under the Interstate Commerce Act yet, it being as well an offense against the State statute on the same subject, the remedies provided were concurrent. In the Puritan Coal Co. case, (supra), we held, assuming the discrimination complained against, that the offense was threefold in character: first, an offense against common law; second, an offense against the Federal statute regulating interstate commerce,—quoted above—and, third, against our own State statute of June 4, 1883, P. L. 72, which de-

clares that any such discrimination in facilities for the transportation of freight within the State, or coming from or going to any other state shall be unlawful. It is to be observed that here, as in the Puritan Coal Co. case, the thing complained of was unjust and unlawful discrimination, and that alone; in the one case discrimination in furnishing a switch connection; in the other, the Puritan Coal Mining Co. case, discrimination in furnishing cars. The distinction between these several facilities is without legal significance; the essential thing being, not the failure to furnish cars in the one case or failure to furnish switching facilities in the other, but the unjust discrimination practiced between shippers who were alike entitled to the facilities they respectively asked for. On appeal to the Supreme Court of the United States the judgment of this court in the Puritan Coal Co. case was affirmed in 237 U. S. 121. In the opinion filed in the case, Mr. Justice LAMAR, after making specific reference to Sections 3, 8 and 9 of the Federal statute, reciting the latter of these, says "Section 3 of the Commerce Act makes it unlawful for the carrier to unduly prefer one shipper over another. Section 8 gives a right of action against the carrier for damages occasioned by his doing an act prohibited by the statute, and Section 9 provides; 'that any person or persons claiming to be damaged by any common carrier subject to the provisions of this act may either make complaint to the commission as hereinafter provided for, or may bring suit in his or her own behalf for the recovery of the damages for which such common carrier may be liable under the provisions of this act, in any District or Circuit Court of the United States of competent jurisdiction; but such person or persons shall not have the right to pursue both of these remedies and must in each case elect which one of the two methods of procedure herein provided for he or they will adopt.' It will be seen that this section does more than create a right and designate the court in which it is to be enforced. It gives the shipper the option

to proceed before the commission or in the Federal Courts. The express grant of the right of choice between these two remedies was the exclusion of any other remedy in a State court; and that the Federal tribunals have exclusive jurisdiction of a certain class of cases referred to in Section 9 has been recognized in the few decisions dealing with the question......But Sections 8 and 9 standing alone might have been construed to give the Federal Courts exclusive jurisdiction of all suits for damages occasioned by the carrier violating any of the old duties which were preserved, and the new obligations which were imposed by the Commerce Act. And evidently for the purpose of preventing such a result, the proviso of Section 22 declared that 'nothing in this act contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this act are in addition to such remedies.' That proviso was added at the end of the statute—not to nullify other parts of the act, or to defeat rights or remedies given by preceding sections but to preserve all existing rights which were not inconsistent with those created by the statute. It was also intended to preserve existing remedies such as those by which a shipper could, in a State court, recover for damages to property while in the hands of the interstate carrier, damages caused by delay in shipments, damages caused by failure to comply with its common law duties and the like. But for this proviso to Section 22 it might have been claimed that, congress having entered the field, the whole subject of liability of carrier to shippers in interstate commerce had been withdrawn from jurisdiction of the State courts, and this clause was added to indicate that the Commerce Act in giving rights of action in Federal Courts, was not intended to deprive the State courts of their general and concurrent jurisdiction: Galveston, Harrisburg & San Antonia Ry. Co. v. Wallace, 223 U. S. 481.

"Construing therefore Sections 8 and 9 and 22 in con-

nection with the statute as a whole, it appears that the act was both declaratory and creative. It gave shippers new rights, while at the same time preserving existing causes of action. It did not supersede the jurisdiction of State courts in any case, new or old, where the decision did not involve the determination of matters calling for the exercise of administrative power and discretion of the commission; or relate to a subject as to which the jurisdiction of the Federal Courts had otherwise been made exclusive." Further on the opinion reads "There are several decisions, already cited which hold that suits against railroads for unjust discrimination in interstate commerce can only be brought in the Federal Courts. But it must be borne in mind that there are two forms of discrimination—one in the rule, and the other in the manner of its enforcement; one in promulgating a discriminatory rule, the other in the unfair enforcement of a reasonable rule. In a suit where the rule of practice itself is attacked as unfair and discriminatory, a question is raised which calls for the exercise of judgment and discretion of the administrative power which has been vested by congress in the commission. It is for that body to say whether such a rule unjustly discriminates against one class of shippers in favor of another. Until that body has declared the practice to be discriminatory and unjust, no court has jurisdiction of a suit against an interstate carrier for damages occasioned by its enforcement. When the commission has declared the rule to be unjust, redress must be sought before the commission or in the United States courts of competent jurisdiction as provided in Section 9. But if the carrier's rule, fair on its face, has been unequally applied and the suit is for damages occasioned by its violation or discriminatory enforcement, there is no administrative question involved, the courts being called on to decide a mere question of fact as to whether the carrier has violated the rule to plaintiff's damage. Such suit, though against an inter-

state carrier for damages arising in interstate commerce, may be prosecuted either in the State or Federal courts."

In the later case of Ill. Cent. R. R. Co. v. Mulberry Hill Coal Co., 238 U. S. 275, a case where the only complaint was failure of a railroad company to furnish cars within a reasonable time after demand in violation of a State law, Mr. Justice PITNEY delivering the opinion, reasserts the same doctrine, and then adds, "In actions against railroad companies for unjust discrimination in interstate commerce where the rule of distribution itself is attacked as unfair or discriminatory a question is raised which calls for the exercise of the authority of the Interstate Commerce Commission; but if the action is based upon a violation or discriminatory enforcement of the carrier's own rule for car distribution no administrative question is involved, and such an action, although brought against an interstate carrier for damages arising in interstate commerce, may be prosecuted either in the State or Federal courts. And because in that case the action was not based upon the ground that the carrier's rule of car distribution was unreasonable or discriminatory, but that plaintiff was damaged by reason of the carrier's failure to furnish it with cars to which it was entitled even upon the basis of the carrier's own rule of distribution, it was held that the State court had jurisdiction without previous application to the Interstate Commerce Commission.

"It is true that the Puritan case arose before the passage of the Hepburn Act of 1906; but there is nothing in the amendment introduced by that act to affect the jurisdiction of the State court in an action such as the present.

"In this case plaintiff made no attack whatever upon defendant's rules for car distribution. The declaration, indeed, is based wholly upon the statute and contains no averment of discrimination. It was defendant that endeavored to import the question of car distribution into the case by introducing the evidence above referred

to, and by requesting an instruction (which the court accordingly gave) to the effect that if defendant had not and could not procure sufficient coal cars to furnish all of the operators on its lines with all the cars desired and demanded by them, and did fairly and equitably distribute its available cars among the operators, it discharged its whole duty to plaintiff. But the verdict of the jury in favor of plaintiff negatived the hypothesis of fact upon which this and another like instruction were based."

We have quoted at length from the opinions in these several cases not only to show strict concurrence in the recognition of what may now be regarded as a settled principle of construction in connection with the Interstate Commerce Act, but because in one or other may be found a conclusive answer to every point attempted to be made by appellant in this particular contention. For instance, it is insisted that the provision of Section 22 of the Interstate Commerce Act "that nothing in this act contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this act are in addition to such remedies," had no operation in the premises, since the amendment of 1906 providing a remedy for failure to furnish switch connection was passed after the provision of Section 22 referred to, and confided the jurisdiction to the commission alone. The answer to this is found in the opinion of Justice PITNEY where he says "It is true that the Puritan case arose before the passage of the Hepburn Act of 1906; but there is nothing in the amendments introduced by that act to affect the jurisdiction of a State court in an action such as the present." Again, it is insisted that the provisions of the amendment of 1906 give exclusive jurisdiction in such cases to the Federal Court. The answer to this is found in the opinion of Mr. Justice LAMAR where he says that construing the statute as a whole "It is both declaratory and creative. It gave shippers new rights, while at the same time preserving exist-

ing causes of action. It did not supersede the jurisdiction of State courts in any case, new or old, where the decision did not involve the determination of matters calling for the exercise of administrative power and discretion of the commission." This we take to mean cases where the action is based on discrimination pure and simple.

The question remains, was the discrimination here complained of in the observance of a discriminatory rule adopted by the carrier, or was it in the unfair enforcement of a reasonable rule. If the former, under the authorities cited, the question would call for the judgment and discretion of the administrative power of the federal commission, and exclusive jurisdiction would be vested in that tribunal; if the complaint be not against the rule, it would follow that no administrative question would be involved. Here no rule was involved; the complaint was arbitrary discrimination in granting switch facilities, not that it was violative of any promulgated system or rule, but according to the mere pleasure and favoritism of the railroad company. The defendant company for all that appears, never adopted any rule for governing the regulation of the distribution of such facilities as were here claimed; so it is not the violation of any rule that is here complained of but arbitrary and unjust denial of a right given the plaintiffs by our own statute. We fail to see how any administrative question arises. If none, jurisdiction remains with the State courts.

What matters it that had the facility been furnished the plaintiff it would have been employed to some extent in interstate shipments? The discrimination established was violative of the statute however the facility demanded and refused might afterwards have been employed, and by that statute the offense is to be measured. What it denounces is unjust discrimination in furnishing facilities for the transportation of freight within this State, or coming from or going to any other state. In-

stead of operating as an obstruction to interstate commerce, it is manifest that it is promotive of, and in furtherance of the one purpose of the federal legislation.

On the question of the jurisdiction of the State courts in an action such as this, the learned trial judge held in accordance with the views here expressed. The assignments of error so far as they relate to his ruling on this branch of the case are accordingly overruled.

The remaining assignment complains of the insufficiency of the evidence to support the averment in the statement of claim that the action was brought to recover because of alleged refusal of defendant to grant an application for a switch connection made in May, 1903, whereas the proof showed that the application was made in 1902. The action was brought May 20, 1909. If the statute of limitations began to run with the application that was made in 1902, then it would follow that the action was barred when suit was brought; and this is appellant's contention. The argument rests on the assumption that the right of action accrued when the demand was made for the switch in 1902. This would be true had the defendant then disclaimed liability and refused the demand; but not only is there entire absence of all evidence of any such disclaimer and refusal, but the contention of defendant on the trial was that no demand had been made for the facility in 1902. The evidence on part of plaintiff was that a written demand had been made in 1902, and that no answer had been returned until the latter part of May or the beginning of June of the year following, when plaintiff called at the office of the superintendent and inquired of that official what the company proposed doing with the request that had been filed in 1902 for a switch. It was then for the first time they were met with a refusal. It is a mistake to assume that the right of action begins with the demand; the offense is complete with the refusal of the demand. "A demand once made and compliance refused set the statute in motion, and the claimant cannot by making subse-

quent demands cause the statute to run from a later date." Am. & Eng. Ency., Vol. 19, p. 197, and the authorities there cited in support of the text. The several assignments of error have each been answered in what we have said. They are overruled and the judgment is affirmed.