**Wilbur Glenn Voliva, Individually and as General Overseer of the Christian Catholic Church, Appellant, v. WCBD, Inc., Appellee.**

**Gen. No. 9,713.**

Opinion filed January 14, 1942. Rehearing denied February 27, 1942.

J. A. MILLER, of Waukegan, and CASSELS, POTTER & BENTLEY, of Chicago, for appellant.

SAMUEL R. WITTELLE, of Chicago, for appellee; ANDREW G. HALEY, of Washington, D. C., of counsel.

Mr. Justice Dove delivered the opinion of the court.

The circuit court of Lake county entered a decree upon appellee's motion, dismissing for want of equity, appellant's complaint for an injunction restraining appellee from enforcing a requirement that appellant submit the script of his radio broadcasts over appellee's station 48 hours in advance. Almost 30 days thereafter appellant filed a petition to vacate the decree and for leave to file an amended and supplemental complaint tendered with the petition, which was denied. He has appealed from the decree and also from the order denying him leave to file an amended and supplemental complaint.

The original complaint alleges that appellant was formerly the owner of radio station WCBD, and sold the same to appellee in 1934, retaining a proprietary interest therein; that on December 9, 1936, the contract of sale was canceled and a new agreement was entered into, one of the provisions of which is that appellant shall have the use of the facilities of the station at certain hours therein mentioned on Tuesdays, Thursdays, Sundays, Thanksgiving, Christmas and New Years days, for broadcasting, free of cost to him, with a clause: "but said broadcasts will be subject to the control of the party of the second part (appellee) in complete accord with the Communications Act of 1934 as amended and all rules and regulations of the Federal Communications Commission"; that during 1938 and 1939, appellant at various times announced his support of various candidates for both local and national offices, and was advised by appellee that unless he restricted his broadcasts to religious subjects, appellee would require written script of his broadcasts 48 hours in advance, in default of which his broadcasts would be cut off the air; that after various discussions between the parties, appellant wrote appellee on April 21, 1939 informing appellee that he would make no broadcasts for or on behalf of candi-

dates for political office without first submitting the script 48 hours in advance, reserving the right to broadcast upon any matters involving religion without submission of script, and the right to speak concerning social, political and economic problems without any restriction, with the understanding that such broadcasts are not for the purpose of assisting or detracting from any political party or any candidates of a political party; that such addresses ˙should be purely in the nature of commentaries, interpretations, or criticisms of such social, political or economic problems, and that the agreement was made purely for the purpose of avoiding any trouble and that none of appellant's rights under the terms of his contract were waived; that on or about July 21, 1940, appellant commented upon the political situation and discussed the implications arising from the actions of Franklin D. Roosevelt being a candidate for a third term as President; that shortly thereafter appellee threatened to ·cut off appellant's broadcasts unless he submitted script thereof, subject to censorship, 48 hours in advance; that on July 31, 1940, appellee wrote him reminding him that he had concluded his letter of April 21, 1939 with the statement that he would at all times endeavor to protect to the utmost their mutual interests, and assured appellee there would be no occasion for any further trouble about the matter; that the communication from appellee stated the broadcast of July 21st digressed from the purely religious nature of a church sermon in such a glaring manner that in the protection of appellee's interests in the operation of the station, it was forced to insist on the submission of script 48 hours in advance; that appellant is not required under the terms of the contract to submit any script, and so long as he complies with the act, and the rules and regulations of the commission, he has the right to broadcast without any interference from appellee; that his broadcasts have not been and will not

be in violation thereof; and that appellee has no right to limit them except in case of such violation. The complaint concludes with allegations that if appellee carries out its threats and does not transmit appellant's radio broadcasts, he will lose a large portion of his radio audience; that it is impossible to determine whether he can procure the use of another radio station for the same hours, and that he has no remedy at law.

Appellee's motion to dismiss is on the grounds that the complaint does not set out a cause of action; that under the terms of the act it has the right, and it is its duty, to control, regulate and supervise broadcasts over its station; that the complaint does not disclose any unreasonable exercise of such right and duty, but shows appellant agreed to such control and supervision.

Appellant's amended and supplemental complaint, tendered with the petition to vacate the former decree, amplifies the allegations of the original complaint, and alleges, upon information and belief, that the requirement of appellee that appellant submit the script of his proposed broadcast 48 hours in advance, was not made in good faith, but was for the purpose of harassing, hampering and interfering with him, with the ultimate object of compelling him to cease using the station; and that under the creed of his church, all public sermons and religious discussions are required to be delivered extemporaneously in order that the speaker may respond to Divine guidance and inspiration. In denying the prayer of the petition, the chancellor held that the amended and supplemental complaint tendered no material issue not already decided, and denied a temporary injunction.

Appellant relies upon section 326, Title 47, U. S. C. A., which provides:

"Nothing in this chapter shall be understood or construed to give the Commission the power of cen-

sorship over the radio communications or signals transmitted by any radio station, and no regulation or condition shall be promulgated or fixed by the Commission which shall interfere with the right of free speech by means of radio communication. . . ."

In *Trinity Methodist Church v. Federal Radio Commission*, 62 F. (2d) 850, the minister of the church had repeatedly made unjustified charges against judges and the bar association, alluded slightingly to the Jews as a race, and attacked the Roman Catholic Church. The court, in holding the commission was justified in refusing to renew the license of the church, recognized the constitutional guaranty that freedom of speech and the press cannot be infringed by legislative, executive or judicial action, and went on to say: "But this does not mean that the government, through agencies established by Congress, may not refuse the renewal of a license to one who has abused it to broadcast defamatory and untrue matter. In that case, there is not a denial of the freedom of speech, but merely the application of the regulatory power of Congress in a field within the scope of its legislative authority."

The court further said: "If it be considered that one in possession of a permit to broadcast in interstate commerce may, without let or hindrance from any source, use these facilities, reaching out, as they do, from one corner of the country to the other, to . . . offend the religious susceptibilities of thousands, inspire political distrust and civic discord, . . . then this great science, instead of a boon, will become a scourge, and the nation a theater for the display of individual passions and the collision of personal interests. This is neither censorship nor previous restraint, nor is it a whittling away of the rights guaranteed by the First Amendment, or an impairment of their free exercise. Appellant may continue to indulge his strictures upon the characters of men in public office. He may just as freely as ever criticize religious

practices of which he does not approve. He may even indulge private malice or personal slander—subject, of course, to be required to answer for the abuse thereof—but he may not, as we think, demand, of right, the continued use of an instrumentality of commerce for such purposes, or any other, except in subordination to all reasonable rules and regulations Congress, acting through the Commission, may prescribe.''

The so-called Roosevelt speech, attached as an exhibit to the amended and supplemental complaint, is in a large part highly controversial. Thinly veiled as a religious dissertation, it specifically attacks the integrity of Mr. Roosevelt on becoming a candidate, charges his absolute domination of the convention that nominated him, and predicted that the country is headed for a dictatorship, with Roosevelt as the last president. This was a direct violation of his promise to refrain from such actions. While it precipitated the demand for submitting script, appellee does not rely upon it as the basis of its demand, but claims that it and the prior political broadcasts which he had agreed to abandon without first submitting the script, indicate the need for supervision over his broadcasts. In *KFKB Broadcasting Ass'n, Inc. v. Federal Radio Commission,* 47 F. (2d) 670, the court said:

''In considering an application for a renewal of the license, an important consideration is the past conduct of the applicant, for 'by their fruits ye shall know them.' Matt. VII: 20. Especially is this true in a case like the present, where the evidence clearly justifies the conclusion that the future conduct of the station will not differ from the past.'' This language is apropros here, if appellee has the right to regulate and supervise broadcasts over its station.

The 1934 contract of sale of the station which the commission refused to approve reserved to appellant the control of all broadcasts originating in his studio. The Federal Communications Commission held the

effect of this reservation would be to divide the control between the licensee (appellee) and a third party (appellant), in violation of section 310 (b) of the Communications Act, and consequently refused to approve the sale until that part of the contract was eliminated. The contract was thereupon canceled and the contract of December 9, 1936 containing the provision above quoted was entered into. (*In re WCBD, Inc.,* 3 F. C. C. 467.)

The business of broadcasting by radio is impressed with a public interest. Licensees have a positive unqualified responsibility of serving that interest as a matter of law. (*In re Farmers & Bankers Life Ins. Co. (KFBI),* 2 F. C. C. 455; *In re Don Lee Broadcasting System (KFRC),* 2 F. C. C. 642, aff'd 76 F. (2d) 998; *In re Ben S. McGlashan (KGFJ) v. Federal Communications Commission,* 2 F. C. C. 145.) They must necessarily be held responsible for all program service and may not delegate their ultimate responsibility for such to others. (*In re Bellingham Broadcasting Co.,* F. C. C. Docket No. 5478.) In the *McGlashan* case it was held: "The contention of counsel that licensees should not have the duty of examining into the propriety of advertising to be broadcast is manifestly contrary to law."

In *United States Broadcasting Co., Voice of Brooklyn, Inc.,* (WLTH) Docket No. 1967, 2 F. C. C. 208, in denying an application for renewal of a license, the Commission said: "Complete supervision and control over programs, including careful examination of their content, directly affects the rendition of a public service. The right to determine, select, supervise, and control programs is inherently incident to the privilege of holding a station license. In fact, the right becomes a responsibility of a licensee, as he must be held to strick accountability for the service rendered."

In another case, *In re Morris,* 2 F. C. C. 269, the commission, in refusing renewal of a license, said:

"The Commission considers, as an element of public interest, the economic factor involved in this application. Against this, however, it must weigh the need for this service, the character of the service rendered by this station, the fact that the applicants have no control over the programs to be transmitted from their studio, and can exercise no censorship over them, and the fact that there is interference with the service of station WOW, an existing station at Omaha, Nebraska.''

The above pronouncements of the commission have the effect of rules laid down by it in the exercise of its statutory authority, and by which appellant in his contract of sale agreed to be governed. One of such rules is that the licensee must control and supervise broadcasts over its station. Failure to observe it might subject appellee to a refusal of its application for a renewal of its license at the end of the three-year period prescribed by the law. This is clearly obvious from the former ruling of the commission when appellant attempted to retain control of the broadcasts in the sale to appellee. The reasonableness of the requirement for submitting script is apparent from the facts.

The chancellor correctly held the original complaint did not state a cause of action. As to the amended and supplemental complaint, it states no additional facts which constitute a cause of action. The motion to dismiss admits well-pleaded facts but does not admit conclusions of law or inferences drawn by the pleader. (*Lietzman v. Radio Broadcasting Station WCFL*, 282 Ill. App. 203.) It was not until almost 30 days after the entry of the decree that appellant sought to file an amended and supplemental bill. The question of allowing an amendment in chancery is largely in the discretion of the trial court, and a refusal to allow it will not be reversed unless there has been a manifest abuse of discretion. (*Walker v.*

*Struthers,* 273 Ill. 387; *Foss v. People's Gas Light & Coke Co.,* 241 Ill. 238.)   There was no such abuse here.

The decree dismissing the complaint and the order denying the prayer of the petition to vacate it and for leave to file the amended and supplemental complaint are each affirmed.

*Decree and order affirmed.*