REGENTS OF NEW MEXICO COLLEGE OF AGRICULTURE & MECHANIC ARTS v. ALBUQUERQUE BROADCASTING CO.

No. 3295.

Circuit Court of Appeals, Tenth Circuit.

Jan. 11, 1947.

Mexico corporation, was the owner of Broadcasting Station KOB, the transmitter, and the real and personal property used in the operation of such station. On that date, the Regents of the College and the Albuquerque Broadcasting Company,[2] a New Mexico corporation, entered into a contract by which the College sold, and the Broadcasting Company purchased, such station and property. In the contract, the College is referred to as party of the first part, and the Broadcasting Company as party of the second part. The following provisions of the contract are pertinent here:

"And as a further consideration for the sale of the property, real and personal hereinbefore described, the party of the second part agrees that it will furnish to the said party of the first part and to such other educational institutions as it may direct, but for educational purposes only and not for commercial or revenue producing purposes, one hour per day broadcasting time for each day the said station shall be operated, the time so allotted not to be cumulative if unused each day or part of day, but said unused time to be forfeited, and said time to be divided as follows: thirty minutes prior to six o'clock P. M. and thirty minutes subsequent to six o'clock P. M., Mountain Standard Time, the said party of the first part or other institutions to furnish programs at such times in advance of their broadcasting as may be convenient in the operation of said station, said broadcasting time to be furnished to the party of the first part or such other educational institutions as it may direct, free from any cost or expense to it; so long as said Radio Station is operated and maintained by the second party, its successors and assigns, it being understood that the particular time for broadcasting herein provided for shall be selected at the option of the party of the first part, and the first party at its option may have the privilege of furnishing the announcer or broadcaster for such educational programs at its expense, and in the broadcasting by said station the name of the 'New Mexico State College at Las Cruces' shall be included in the station announcements.

Joseph F. Zias, of Washington, D. C. (Philip G. Loucks, of Washington, D. C., and C. C. McCulloh, of Santa Fe, N. M., on the brief), for appellant.

W. Theodore Pierson, of Washington, D. C., and Carl A. Hatch, of Clovis, N. M. (A. T. Hannett, of Albuquerque, N. M., on the brief), for appellee.

Before PHILLIPS, HUXMAN, and MURRAH, Circuit Judges.

PHILLIPS, Circuit Judge.

On May 7, 1936, the New Mexico College of Agriculture and Mechanic Arts,[1] a New

---

[1] Hereinafter referred to as the College.

[2] Hereinafter referred to as the Broadcasting Company.

"It Is Further Understood and Agreed between the parties hereto that the party of the second part shall have complete control of the said Broadcasting Station KOB, its equipment and operation, including unlimited supervision of programs to be broadcast, and that this sale is made subject to the consent of the Federal Communications Commission."

On May 7, 1936, the College executed an assignment to the Broadcasting Company of its license No. B-5-R-130, dated January 28, 1936. The assignment was approved by the Federal Communications Commission,[3] effective June 20, 1936. On June 30, 1945, the College made the following written demand upon the Broadcasting Company: "The Board of Regents of the New Mexico College of Agriculture and Mechanic Arts hereby makes formal demand upon you for the following radio time; from 8:30 P. M. to 9:00 P. M. on Sunday, Tuesday, Wednesday, Friday and Saturday, and from 5:30 P. M. to 5:45 P. M. daily except Sunday, and from 10:00 A. M. to 10:30 A. M. on Sunday, in addition to the time now being used by the college; and requests that you signify your willingness to comply with this request within two weeks from the date hereof."

· On the same date, the Board of Regents of the College adopted a resolution to the effect that, in the event of the refusal on the part of the Broadcasting Company to comply with the demand within two weeks from the date thereof, the Attorney General of New Mexico be authorized and directed to file a suit to obtain a declaratory judgment or a suit for the specific performance of the contract, or a combination of both actions, in order to determine the rights of the parties under the contract. The demand indicated an unwillingness on the part of the College to give the Broadcasting Company a description of the programs to be offered or to afford the Broadcasting Company an opportunity to determine whether the programs offered would be in the public interest, or whether the times specified from the standpoint of the public interest would be the most desirable periods to broadcast such programs.

The Broadcasting Company brought this action against the College for a declaratory judgment.

In its complaint, the Broadcasting Company alleged the contract and the demand. It further alleged that it owns and operates radio station KOB which employs apparatus for the transmission, on a frequency assigned by the Commission, of signals by radio to residents of at least 16 states under a license and authorization issued by the Commission, pursuant to the Communications Act of 1934, as amended,[4] 47 U.S.C.A. § 151 et seq.

In paragraph three of its complaint, the Broadcasting Company alleged that under such Act and the rules, regulations, restrictions, and conditions made and imposed upon the Broadcasting Company by the Commission, the Broadcasting Company "has the right and the duty to exercise its independent judgment and discretion to control, supervise, and direct the use and operation of the station in the interest of the listening public and to choose and select programs and allocate time for the broadcast of programs which will best serve the interest of the listening public" and that it is prohibited by law from assigning such rights or delegating such duties, directly or indirectly, voluntarily or involuntarily, to any person "except completely and absolutely to another who then must become the licensee after and only after obtaining the prior written consent of" the Commission.

It further alleged that by such written demand, the College demanded as of right and continued to demand as of right, contrary to the requirements of the Act, exact periods of time aggregating four and one-half hours per week in perpetuity for the use and control of the College without regard for the interest of the listening public, the exclusive right of the Broadcasting Company to control, supervise, and direct the use and operation of the station, and the nondelegable duties, judgment, and discretion imposed upon the Broadcasting

---

[3] Hereinafter referred to as the Commission.

[4] Hereinafter referred to as the Act.

Company to choose and select programs and allocate broadcasting time in the interest of the listening public.

It further alleged that if it acted in compliance with the demand, its acts would constitute a violation of the Act, and the rules, regulations, restrictions, and conditions made and imposed upon it by the Commission, and would subject it to criminal penalties.

The Broadcasting Company prayed for judgment declaring: (1) That it cannot, in any manner, delegate its right to use its best judgment in scheduling programs and allocating the time they are to be broadcast, and, in the interest of the listening public, it has the sole right to schedule and allocate the time when programs furnished by the College under the contract shall be broadcast by the Broadcasting Company; (2) that the Broadcasting Company, under its license from the Commission, is "obligated to broadcast under the rules, regulations, terms, and restrictions imposed upon it" by the Commission; and (3) that the College is without right under the contract to require the Broadcasting Company to assign to the College any period or periods of time for the broadcast of programs without furnishing, in advance, information on the program to be broadcast and without recognizing that it is the sole right and duty of the Broadcasting Company, under its license, to exercise its independent judgment as to the time when the programs of the College shall be scheduled and broadcast.

The College filed an answer and cross-complaint. In its answer, it denied the allegations of paragraph three of the complaint, set out above, and prayed for a judgment declaring that the College "has the absolute right to designate periods that" its "programs shall be broadcast," subject only to the provision of the contract that 30 minutes shall be before 6 p. m. and 30 minutes shall be after 6 p. m., and adjudging that the Broadcasting Company furnish the College whatever periods of radio time the College may demand, limited only by the provision that 30 minutes shall be before 6 p. m. and 30 minutes shall be after

6 p. m., and enjoining the Broadcasting Company from breaching the contract.

In its cross-complaint, it sought damages for alleged breaches of the contract.

In depositions of certain officials of the College, taken by the Broadcasting Company for the purpose of discovery, under Rule 26 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, it was conclusively established that it was the position of the College in making the demand that the Broadcasting Company had no right or duty in behalf of the listening public to refuse to broadcast any programs submitted by the College during periods designated under color of the contract.

The College also filed a motion to dismiss on the following grounds:

"(1) That no federal question is involved in this suit.

"(2) That if any federal question is involved in this suit, it is a federal question of which the Federal Communications Commission has exclusive jurisdiction."

The Broadcasting Company filed a motion for summary judgment.

The trial court overruled the motion to dismiss and entered a judgment declaring:

"1. That the demand of the defendant, dated June 30, 1945, for the scheduling of its programs for specific time was rightfully refused by the plaintiff; that under the Federal Communications Act of 1934, as amended, and under the rules and regulations, restrictions and conditions made and imposed upon the plaintiff by the Federal Communications Commission, the plaintiff has the sole and exclusive right and duty to exercise its independent judgment and discretion to control, supervise, and direct the use and operation of Station KOB in the interest of the listening public and to choose and select programs and allocate time for the broadcast of programs which will best serve the interest of the listening public, and is prohibited by law from assigning said right or delegating the said duties, voluntarily or involuntarily, directly or indirectly, to any person or party, including the defendant.

"2. That the plaintiff under its license from the Federal Communications Commission is obligated to broadcast under the rules, regulations, terms and restrictions imposed upon it by the Federal Communications Commission, and that had the plaintiff acceded to the demand of the defendant for specific time as set forth in said demand under date of June 30, 1945, the plaintiff would have violated its duties under its license.

"3. That the defendant is without right under the contract annexed to plaintiff's complaint and marked 'Exhibit A' to require the plaintiff to turn over any period or periods of time the defendant elects to demand without furnishing in advance information on the program to be broadcast and without recognizing that it is the sole right and duty of the plaintiff under its license from the Federal Communications Commission to exercise its independent judgment as to the time when defendant's programs shall be scheduled and broadcast in the interest of the listening public."

The College has appealed.

We hold that the trial court had jurisdiction. Our reasons for that conclusion will become more apparent, and can be more readily stated, after a determination of the merits of the case.

■ The Act is an act regulating commerce.[5] Section 151 thereof provides:

"For the purpose of regulating interstate and foreign commerce in communication by wire and radio so as to make available, so far as possible, to all the people of the United States a rapid, efficient, Nation-wide, and world-wide wire and radio communication service with adequate facilities at reasonable charges, * * * there is hereby created a commission to be known as the 'Federal Communications Commission', which shall be constituted as hereinafter provided, and which shall execute and enforce the provisions of this chapter."

Section 301 of the Act in part provides:
"It is the purpose of this chapter, among other things, to maintain the control of the United States over all the channels of interstate and foreign radio transmission; and to provide for the use of such channels, but not the ownership thereof, by persons for limited periods of time, under licenses granted by Federal authority, and no such license shall be construed to create any right, beyond the terms, conditions, and periods of the license. No person shall use or operate any apparatus for the transmission of energy or communications or signals by radio (a) from one place in any Territory or possession of the United States or in the District of Columbia to another place in the same Territory, possession, or District; * * * except under and in accordance with this chapter and with a license in that behalf granted under the provisions of this chapter."

Section 303 of the Act in part provides:
"Except as otherwise provided in this chapter, the Commission from time to time, as public convenience, interest, or necessity requires, shall—

"(a) Classify radio stations;

"(b) Prescribe the nature of the service to be rendered by each class of licensed stations and each station within any class;

* * * * * *

"(f) Make such regulations not inconsistent with law as it may deem necessary to prevent interference between stations and to carry out the provisions of this chapter * * *;

"(g) Study new uses for radio, provide for experimental uses of frequencies, and generally encourage the larger and more effective use of radio in the public interest;

* * * * * *

"(i) Have authority to make special regulations applicable to radio stations engaged in chain broadcasting;

* * * * * *

"(r) Make such rules and regulations and prescribe such restrictions and conditions, not inconsistent with law, as may be necessary to carry out the provisions of this chapter, * * *."

The underlying purpose of the Act is to protect the public interest in communications.[6]

5 National Broadcasting Co. v. United States, 319 U.S. 190, 63 S.Ct. 997, 87 L. Ed. 1344.

6 Scripps-Howard Radio v. Federal Communications Commission, 316 U.S. 4, 14, 62 S.Ct. 875, 86 L.Ed. 1229; WOKO,

Rule 103.6, 47 CFR 1.71, promulgated by the Commission, December 18, 1935, in part provides: "Each application for an instrument of authorization shall be made in writing, under oath of the applicant, on a form prescribed and furnished by the Commission; * * *."

Rule 103.18, 47 CFR 1.83, promulgated by the Commission, December 18, 1935, dealing with assignment of, or transfer of, a license, in part provides:

"In support of each such application affecting a radio station there shall be submitted under oath or affirmation, in addition to the information required by the forms furnished by the Commission, in properly marked exhibits, the following information: * * *

"(a) (5) Where the assignment is voluntary, an executed copy of the contract or lease agreement which must provide (i) that assignee shall have complete control of the station, its equipment and operation, including unlimited supervision of programs to be broadcast, (ii) transfer shall be subject to the consent of the Commission, and (iii) the price, whether paid or promised, and all the terms and conditions of the proposed sale or transfer; * * *"

In U. S. Broadcasting Co., Voice of Brooklyn, Inc. (WLTH) 2 F. C. C. 208, the Commission said: "Complete supervision of and control over programs, including careful examination of their content, directly affects the rendition of a public service. The right to determine, select, supervise, and control programs is inherently incident to the privilege of holding a station license. In fact, the right becomes a responsibility of a licensee, as he must be held to strict accountability for the service rendered."

See, also, In re Bellingham Broadcasting Co., 8 F.C.C. 159; In re Ben S. McClashan (KGFJ) v. Federal Communications Commission, 2 F.C.C. 145.

■ These decisions of the Commission

have the effect of rules laid down by it in the exercise of its statutory authority. [7]

On March 18, 1938, the Commission undertook a comprehensive investigation to determine whether special regulations applicable to radio stations engaged in chain broadcasting were required in the "public interest, convenience or necessity." On May 2, 1941, the Commission issued its report on chain broadcasting, setting forth its findings and conclusions upon the matters explored in the investigation, together with an order adopting regulations. In its report, the Commission said:

"It is the station, not the network, which is licensed to serve the public interest. The licensee has the duty of determining what programs shall be broadcast over his station's facilities, and cannot lawfully delegate this duty or transfer the control of his station directly to the network or indirectly to an advertising agency. He cannot lawfully bind himself to accept programs in every case where he cannot sustain the burden of proof that he has a better program. The licensee is obliged to reserve to himself the final decision as to what programs will best serve the public interest. We conclude that a licensee in not fulfilling his obligations to operate in the public interest, and is not operating in accordance with the express requirements of the Communications Act, if he agrees to accept programs on any basis other than his own reasonable decision that the programs are satisfactory." (Report, pp. 39, 66.)

The Commission in Regulation 3.105 defined the obligations of licensees with respect to supervision over programs, as follows:

"No license shall be granted to a standard broadcast station having any contract, arrangement, or understanding, express or implied, with a network organization which (a), with respect to programs offered pursuant to an affiliation contract, prevents or hinders the station from rejecting or refusing network programs

Inc., v. Federal Communications Commission, 71 App.D.C. 228, 109 F.2d 665, 667; Black River Valley Broadcasts Co. v. McNinch, 69 App.D.C. 311, 101 F.2d 235, 237; Federal Communications Commission v. Pottsville Broadcasting Co., 309 U.S. 134, 145, 60 S.Ct. 437, 84 L. Ed. 656.

[7] Voliva v. WCBD, Inc., 313 Ill.App. 177, 39 N.E.2d 685.

which the station reasonably believes to be unsatisfactory or unsuitable; or which (b), with respect to network programs so offered or already contracted for, prevents the station from rejecting or refusing any program which, in its opinion, is contrary to the public interest, or from substituting a program of outstanding local or national importance." [8]

The above regulation was sustained in National Broadcasting Co. v. United States, 319 U.S. 190, 63 S.Ct. 997, 87 L.Ed. 1344.

In National Broadcasting Co. v. United States, supra, at page 216, 63 S.Ct. at page 1009, the court said:

"The touchstone provided by Congress was the 'public interest, convenience, or necessity,' a criterion which 'is a concrete as the complicated factors for judgment in such a field of delegated authority permit'. Federal Communications Comm'n v. Pottsville Broadcasting Co., 309 U.S. 134, 138, 60 S.Ct. 437, 439, 84 L.Ed. 656. * * *

"The 'public interest' to be served under the Communications Act is thus the interest of the listening public in 'the larger and more effective use of radio'. § 303(g). The facilities of radio are limited and therefore precious; they cannot be left to wasteful use without detriment to the public interest. 'An important element of public interest and convenience affecting the issue of a license is the ability of the licensee to render the best practicable service to the community reached by his broadcasts.' Federal Communications Comm'n v. Sanders Radio Station, 309 U.S. 470, 475, 60 S.Ct. 693, 697, 84 L.Ed. 869, 1037."

In Voliva v. WCBD, Inc., 313 Ill.App. 177, 39 N.E.2d 685, Voliva, formerly the owner of radio station WCBD, sold the same to WCBD, Inc., retaining a proprietary interest therein. On December 9, 1936, the contract of sale was canceled and a new agreement was entered into, containing a provision that Voliva should have the use of the facilities of the station at certain designated hours on Tuesdays, Thursdays, Sundays, Thanksgiving, Christmas, and New Year's Days for broadcasting, free of cost to him. Voliva brought an action against WCBD to enjoin it from enforcing a requirement that Voliva submit scripts of his radio broadcast over such station 48 hours in advance. The court denied relief on the ground that the station licensee has a positive, unqualified responsibility to serve the public interest and a nondelegable right and duty to control and supervise broadcasts over its station.

■ The regulations and rules promulgated by the Commission, pursuant to its statutory authority, have the force and effect of Federal law.[9]

■ We think there is no doubt that, under the Act and the rules and regulations promulgated by the Commission pursuant thereto, it is the right and nondelegable duty of the Broadcasting Company, acting reasonably, to determine whether a program offered by the College is in the public interest, and to allocate such time for the broadcast of a program offered by the College as will best serve the public interest.

Section 24 of the Judicial Code, as amended, 28 U.S.C.A. § 41, in part provides:

"The district courts shall have original jurisdiction as follows: * * *

"First. Of all suits of a civil nature, at common law or in equity, * * * where the matter in controversy exceeds, exclusive of interest and costs, the sum or value of $3,000, and (a) arises under the Constitution or laws of the United States, * * *

"Eighth. Of all suits and proceedings arising under any law regulating commerce."

Counsel for the College assert that the instant suit does not arise under a law regulating commerce, because it does not really and substantially involve a dispute or controversy respecting the validity, con-

---

8 47 CFR, 1941 Supp., 3.105.

9 Maryland Casualty Co. v. United States, 251 U.S. 342, 349, 40 S.Ct. 155, 64 L.Ed. 297; Columbia Broadcasting System v. United States, 316 U.S. 407, 418, 62 S.Ct. 1194, 86 L.Ed. 1563; C.

V. Starr & Co. v. Commissioner, 4 Cir., 101 F.2d 611, 614; Standard Oil Co. v. Johnson, 316 U.S. 481, 483, 62 S.Ct. 1168, 86 L.Ed. 1611; State ex rel. Kaser v. Leonard, 164 Or. 579, 94 P.2d 1113, 102 P.2d 197, 129 A.L.R. 1125.

struction, or effect of a Federal law upon the determination of which the result depends.

█ It is well settled that the lack of substantiality in a Federal question may appear, either because it is obviously without merit, or because its unsoundness so clearly results from previous decisions of the Supreme Court as to foreclose the subject,[10] or, as it is sometimes stated, there must be a Federal question, not in mere form but in substance, and not in mere assertion but in essence and effect.[11] The reason is plain. If the asserted Federal right is clearly and obviously without merit, the case cannot possibly arise under Federal law.

█ Here, we have the converse. The asserted Federal right and duty are clear and plain and the Broadcasting Company's cause of action is predicated upon a right and duty arising out of, and flowing from, the Act and the regulations of the Commission made pursuant thereto, which regulations have the force and effect of Federal law.[12]

█ Some tests for determining how and when a case arises "under the Constitution or laws of the United States" are well established. To bring a case within the statute (1) a right or immunity created by the Constitution or laws of the United States must be an essential element of the plaintiff's cause of action;[13] (2) the right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction and effect and defeated if they are given another;[14] (3) a genuine and present controversy, not merely a possible or conjectural one, must exist with reference thereto;[15] and (4) the controversy must be disclosed from the face of the complaint unaided by the answer.[16]

█ A suit to enforce a right which takes its origin in a law of the United States is not necessarily one arising under the Constitution or laws of the United States within the meaning of the jurisdictional clause.[17]

But, where it appears from the complaint that the plaintiff asserts a claim or right arising out of Federal law, that such Federal claim is an essential element of plaintiff's cause of action, that such claim is not merely colorable but rests upon a reasonable foundation, that it will be sustained by one construction and defeated by another construction of Federal law, and that a genuine and present controversy exists between the parties with respect thereto, the suit is one arising under the laws of the United States.[18]

---

10 California Water Service Co. v. City of Redding, 304 U.S. 252, 255, 58 S.Ct. 865, 82 L.Ed. 1323; Levering & G. Co. v. Morrin, 289 U.S. 103, 105, 53 S.Ct. 549, 77 L.Ed. 1062; Colonial Drug & Sales Co. v. Western Products Co., 10 Cir., 54 F.2d 216, 219.

11 Cuyahoga Co. v. Northern Ohio Co., 252 U.S. 388, 397, 40 S.Ct. 404, 64 L. Ed. 626; Colonial Drug & Sales Co. v. Western Products Co., 10 Cir., 54 F.2d 216, 219.

12 Standard Oil Co. v. Johnson, 316 U. S. 481, 483, 62 S.Ct. 1168, 86 L.Ed. 1611.

13 Gully v. First Nat. Bank, 299 U.S. 109, 112, 57 S.Ct. 96, 81 L.Ed. 70; First Nat. Bank v. Williams, 252 U.S. 504, 512, 40 S.Ct. 372, 64 L.Ed. 690.

14 Gully v. First Nat. Bank, 299 U.S. 109, 112, 57 S.Ct. 96, 81 L.Ed. 70; King County v. Seattle School Dist., 263 U.S. 361, 363, 364, 44 S.Ct. 127, 68 L.Ed. 339; Starin v. New York, 115 U.S. 248, 257, 6 S.Ct. 28, 29 L.Ed. 388; First Nat. Bank v. Williams, 252 U.S. 504, 512, 40 S.Ct. 372, 64 L.Ed. 690.

15 Gully v. First Nat. Bank, 299 U.S. 109, 113, 57 S.Ct. 96, 81 L.Ed. 70; New Orleans v. Benjamin, 153 U.S. 411, 424, 14 S.Ct. 905, 38 L.Ed. 764; Defiance Water Co. v. Defiance, 191 U.S. 184, 191, 24 S.Ct. 63, 48 L.Ed. 140; Joy v. St. Louis, 201 U.S. 332, 340, 26 S.Ct. 478, 50 L.Ed. 776; City and County of Denver v. New York Trust Co., 229 U.S. 123, 133, 33 S.Ct. 657, 57 L.Ed. 1101.

16 Gully v. First Nat. Bank, 299 U.S. 109, 113, 57 S.Ct. 96, 81 L.Ed. 70; Tennessee v. Union & Planters' Bank, 152 U.S. 454, 14 S.Ct. 654, 38 L.Ed. 511; Louisville & Nashville R. v. Mottley, 211 U.S. 149, 152, 29 S.Ct. 42, 53 L.Ed. 126; The Fair v. Kohler Die Co., 228 U.S. 22, 25, 33 S.Ct. 410, 57 L.Ed. 716; Taylor v. Anderson, 234 U.S. 74, 75, 76, 34 S.Ct. 724, 58 L.Ed. 1218.

17 Shulthis v. McDougal, 225 U.S. 561, 569, 32 S.Ct. 704, 56 L.Ed. 1205.

18 Northern Pacific R. Co. v. Soderberg, 188 U.S. 526, 528, 23 S.Ct. 365, 47 L.Ed. 575; Smith v. Kansas City Title Co., 255 U.S. 180, 199, 41 S.Ct. 243,

Here, the complaint of the Broadcasting Company discloses on its face that it predicates its cause of action upon a right and duty arising under the Act and the rules and regulations of the Commission promulgated pursuant thereto; that the existence of such right and duty is disputed by the College; and that the Broadcasting Company's claim will be sustained by one construction and defeated by another construction of Federal law. Such Federal claim is not merely colorable, but rests upon a reasonable foundation. It follows that the trial court had jurisdiction.

 The College further asserts that the controversy is within the primary jurisdiction of the Commission for the reason that the Act gives the Commission the sole authority to execute and enforce its provisions.[19] But, here, the controversy is between the College and the Broadcasting Company, private parties. It involves a construction of the Act and the rules and regulations of the Commission promulgated pursuant thereto and their effect upon the rights and obligations of the parties under a private contract. The issue is not whether compliance by the Broadcasting Company with the demands made by the College will be in the public interest. Rather, it is whether the Broadcasting Company may lawfully comply with such demands under the Act, enacted for the purpose of protecting the public interest, and the rules and regulations of the Commission, promulgated to effectuate that purpose. We find nothing in the Act assigning issues such as are here presented to the determination of the Commission in the exercise of its primary jurisdiction. They are not issues which fall within the general area of the Commission's statutory discretion in promulgating its regulations.[20] The Commission has exercised its function and prescribed the terms and conditions upon which a radio station and a license may be transferred. This is not a suit to enforce a provision of the Act or of the regulations. No violation of either has occurred. Rather, it is a suit to relieve the Broadcasting Company from demands, compliance with which would result in a violation. Where a suit is between private parties and involves the construction and effect of the Act and the rules and regulations promulgated by the Commission thereunder, and the extent to which they impinge upon the rights and obligations of parties under a private contract, we think there can be no doubt of the jurisdiction of the courts.[21]

Affirmed.

65 L.Ed. 577; King County v. Seattle School Dist., 263 U.S. 361, 363, 364, 44 S.Ct. 127, 68 L.Ed. 339; First Nat. Bank v. Williams, 252 U.S. 504, 512, 40 S.Ct. 372, 64 L.Ed. 690; Gully v. First Nat. Bank, 299 U.S. 109, 114, 57 S.Ct. 96, 81 L.Ed. 70; Viles v. Symes, 10 Cir., 129 F.2d 828, 830.

[19] McIntire v. Wm. Penn Broadcasting Co. of Philadelphia, 3 Cir., 151 F.2d 597; Stenger v. Stenger Broadcasting Corporation, D.C.Pa., 28 F.Supp. 407.

[20] Pennsylvania R. v. Sonman Coal Co., 242 U.S. 120, 124, 37 S.Ct. 46, 61 L.Ed. 188; Great Northern R. v. Merchants Elev. Co., 259 U.S. 285, 289, 42 S.Ct. 477, 66 L.Ed. 943; Illinois Cent. R. v. Mulberry Coal Co., 238 U.S. 275, 282, 35 S.Ct. 760, 59 L.Ed. 1306; J. C. Francesconi & Co. v. Baltimore & O. R. Co., D.C., 274 F. 687, 691.

[21] Radio Station WOW, Inc., v. Johnson, 326 U.S. 120, 65 S.Ct. 1475, 89 L. Ed. 2092, reversing Johnson v. Radio Station WOW, 144 Neb. 406, 432, 13 N. W.2d 556, 14 N.W.2d 666; Southern Broadcasting Corporation v. Carlson, 187 La. 823, 175 So. 587.