CITY OF PEORIA, Plaintiff-Appellee,

v.

GENERAL ELECTRIC CABLEVISION CORPORATION (GECCO), Defendant and Third-Party Plaintiff-Appellee,

v.

FEDERAL COMMUNICATIONS COMMISSION, Third-Party Defendant-Appellant.

Nos. 82–1250, 82–1420.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 13, 1982.

Decided Oct. 4, 1982.

Daniel M. Armstrong, Assoc. Gen. Counsel, F. C. C., Washington, D. C., for third-party defendant-appellant.

Robert W. Coll, McKenna, Wilkinson & Kittner, Washington, D. C., for defendant third-party plaintiff-appellee.

Brian M. Nemenoff, Deputy Corp. Counsel, Peoria, Ill., for plaintiff-appellee.

* Of the Western District of Pennsylvania.

Before WOOD and POSNER, Circuit Judges, and DUMBAULD,* Senior District Judge.

POSNER, Circuit Judge.

We are required in this case to determine the proper route for obtaining judicial review of a regulation of the Federal Communications Commission whose validity is questioned in a suit on a contract. May the court in which that suit is brought determine its validity, or must the court refer the question to the FCC under the doctrine of primary jurisdiction?

In 1966 the City of Peoria granted a 20-year cable television franchise to General Electric Cablevision Corporation (GECCO), which in exchange agreed to pay the city an annual franchise fee equal to 10 percent of GECCO's gross revenues from the franchise. In 1972, however, the FCC promulgated a rule limiting cable franchise fees to 3 percent of gross revenues, 47 C.F.R. § 76.31, though with respect to existing franchises the rule (as amended in 1977) was not to take effect until 15 years after the date of the franchise, which meant, in the case of GECCO's franchise in Peoria, not until 1981.

The City of Peoria did not participate in the 1972 rulemaking proceeding or seek judicial review of the rule. But on the very day in 1981 that the rule became applicable to GECCO's franchise, the city brought this suit in federal district court against GECCO, seeking a declaration that the rule was invalid on various statutory and constitutional grounds and an order directing GECCO to continue paying the 10 percent fee specified in the franchise. The complaint was later amended to add a count based on diversity of citizenship. This count also sought, but under state contract law rather than federal law, an order directing GECCO to continue paying the 10 percent fee. GECCO impleaded the FCC as a third-party defendant, claiming that since it was per-

fectly willing to continue paying 10 percent, the controversy was really between Peoria and the FCC. GECCO also brought a separate proceeding before the FCC to waive the application of Rule 76.31 to the Peoria franchise. The city did not join in GECCO's petition or otherwise become a party to the FCC proceeding, though it did submit a short letter to the Commission in support of the petition.

Both GECCO and the FCC raised jurisdictional objections to the maintenance of this suit in the district court but the court overruled these objections, proceeded to the merits, held the FCC's rule invalid, and entered a judgment declaring the rule void and directing GECCO to comply with the franchise agreement as written. Shortly afterward the Commission's Cable Television Bureau denied GECCO's petition for a waiver, on the ground that neither GECCO nor Peoria had submitted any evidence that the fee was an appropriate element of Peoria's program for regulating cable television.

The district court decided three analytically distinct actions—Peoria's action against GECCO to declare the FCC's rule invalid, an action based on the federal-question jurisdiction of the district court; Peoria's action against GECCO for a declaration of Peoria's rights under the franchise, an action based on the court's diversity jurisdiction; and GECCO's third-party action against the FCC. We must first consider whether the district court had jurisdiction over the subject matter of any of these actions.

■ Peoria's action against GECCO to declare the FCC's rule invalid was brought in the wrong court at the wrong time against the wrong party. Proceedings for judicial review of final orders of the FCC—and a substantive rule such as 47 C.F.R. § 76.31 is a final order for these purposes, see, e.g., *Columbia Broadcasting System, Inc. v. United States,* 316 U.S. 407, 417–19, 62 S.Ct. 1194, 1200–01, 86 L.Ed. 1563 (1942) —may be brought only in a federal court of appeals. Administrative Orders Review Act, 28 U.S.C. § 2342(1); Communications Act of 1934, as amended, 47 U.S.C. §§ 402(a), (b). If the party seeking review was not a party to the FCC's rulemaking proceeding, as the City of Peoria was not, it cannot get review by the court of appeals without first petitioning the FCC to reconsider the rule, 47 U.S.C. § 405, or at least, as we shall see, without seeking some kind of remedy from the agency. And the proper party defendant in the judicial review proceeding is the FCC, not a private company which, like GECCO, may be indifferent to the validity of the rule. We are not so naive as to suppose that GECCO really is indifferent between paying 10 percent of its gross revenues to the City of Peoria and 3 percent; no doubt GECCO is cooperating in the city's efforts to get the rule waived in order to increase the probability that the city will renew its franchise, which expires in four years. But in any event it is the wrong defendant to a suit to set aside the FCC's rule.

■ As for the district court's assumption of jurisdiction over GECCO's third-party complaint against the FCC, we have never heard of a case where a defendant who interposed a defense based on a law or regulation was allowed to implead the enacting body. Suppose a manufacturer sued a distributor for money owing on a contract, and the distributor, though reluctant to impair his relations with the manufacturer by refusing to pay up, interposed a defense based on the Sherman Act because he was afraid that otherwise the Department of Justice would accuse him of being a party to an illegal contract. Could he implead Congress, which enacted the Sherman Act, or the Department of Justice, which is the principal public enforcer of the Act, on the ground that the illegality of the contract was really *their* problem, not his? GECCO's third-party complaint against the FCC seems less silly only because GECCO had the forbearance not to implead Congress (the author of the FCC's rulemaking powers) and, more important, because it is not seeking any relief against the FCC beyond a declaration of its rights under Rule 76.31. GECCO is concerned about having

inconsistent obligations to the FCC and the City of Peoria. It knows that if Rule 76.31 is valid the City of Peoria's desire for the agreed-upon franchise fee must yield, so it wants the district court to tell it whether Rule 76.31 is valid.

■ But even that is beyond the power of the district court. GECCO cannot simply put to the district court the abstract question whether Rule 76.31 is valid, for it cannot receive an advisory opinion from a federal court. It must ask the court either to declare the rule valid or to declare it invalid. If the former, its suit against the FCC would be nonadversary; the FCC will not argue that its rule is invalid, so there will be no case or controversy within the meaning of Article III of the Constitution. If GECCO wants the rule declared invalid, then its plea for declaratory relief is in effect an action to set aside the rule, brought in a court that has no jurisdiction over such actions. Finally, since GECCO cannot seriously be contending that if it loses to Peoria in the original suit the FCC "may be liable to [GECCO] for all or part of [Peoria's] claim against [GECCO]," Fed.R. Civ.P. 14(a), GECCO's third-party complaint is in any event outside the impleader jurisdiction that has been conferred on the federal courts.

■ That leaves only the diversity count in Peoria's complaint to be considered. As GECCO and the City of Peoria are citizens of different states and the amount in controversy between them exceeds $10,000, there is federal jurisdiction under 28 U.S.C. § 1332 of the subject matter of this count, which alleges a breach of the franchise contract under state law. GECCO's defense is that if it complied with the contract it would be violating federal law—Rule 76.31 —which, if valid, of course preempts any inconsistent state law. Cf. *Brookhaven Cable TV, Inc. v. Kelly,* 573 F.2d 765 (2d Cir. 1978). We have to decide whether the district court, though it had subject matter jurisdiction, was authorized to decide the validity of GECCO's defense.

■ It was not. As noted earlier, the City of Peoria could not have gotten the FCC's rule reviewed by a court of appeals without first asking the FCC to reconsider the rule; it would be strange if, still without going to the FCC, Peoria could get judicial review in both a district court and a court of appeals. True, Peoria was not a party to the rulemaking proceeding. But 47 U.S.C. § 405 requires nonparties to petition the FCC for reconsideration before they ask a court of appeals to review an FCC order; and the policy behind this requirement—one of routing all challenges to rules and (other) orders of the FCC initially to the FCC—is equally applicable whether the nonparty wants to challenge the rule directly, in a judicial review proceeding under 28 U.S.C. § 2342(1), or indirectly, by suing someone who can be expected to set up the rule as a defense in the suit.

■ This is not to say that the City of Peoria had to go to the FCC *before* it brought its breach of contract action against GECCO. The doctrine of exhaustion of administrative remedies, as conventionally understood, has application only when a suit is brought to challenge an administrative order. Count I of Peoria's complaint was such a suit, and exhaustion would have been required if the district court had otherwise had jurisdiction over the subject matter of that count. But Count II, the diversity count, was not a challenge as such to an administrative order. Until GECCO pleaded the FCC's rule as a defense the city could not be certain (though it could be, and Count I suggests was, pretty confident) that it had to get the rule waived or invalidated in order to collect the agreed-upon franchise fee in full. But once the defense was pleaded, the proper procedure was for the district judge to stay the *proceeding* before him while Peoria went to the FCC for a determination of the validity and application of the rule. See *United States v. Michigan National Corp.,* 419 U.S. 1, 4–5, 95 S.Ct. 10, 11–12, 42 L.Ed.2d 1 (1974) (per curiam). GECCO's interposing a defense that brought in matters within the regulatory responsibility of the FCC triggered the doctrine of primary

jurisdiction, whereby a suit is interrupted because it involves an issue (here the validity and application of Rule 76.31) that Congress wants one of the administrative agencies to have first crack at. See *United States v. Western Pac. R. Co.,* 352 U.S. 59, 63–64, 77 S.Ct. 161, 164–65, 1 L.Ed.2d 126 (1956), for the general principle, and *Writers Guild of America, West, Inc. v. American Broadcasting Co.,* 609 F.2d 355, 362–66 (9th Cir. 1979), for its application to the FCC.

■■■ The two doctrines, exhaustion and primary jurisdiction, are of course closely related—so much so that it is perhaps pedantic to insist on a distinction. Both seek to carry out a congressional purpose, inferred from the language or history of a regulatory statute, or from the nature of the regulatory agency's responsibilities, of enabling the agency to make a record and a decision on a matter before the courts put their oar in. In this case, both the explicit statutory requirement that a nonparty ask the FCC for reconsideration of any rule it wants set aside, 47 U.S.C. § 405, and the comprehensive regulatory responsibilities exercised by the FCC over the rapidly changing and economically and technologically complex cable television industry, see, e.g., *Midwest Video Corp. v. FCC,* 571 F.2d 1025 (8th Cir. 1978), argue for referring to the FCC—subject of course to eventual judicial review—the question of the validity of Rule 76.31 and its application to GECCO's franchise in Peoria. It is immaterial that the validity of the rule is challenged on constitutional as well as statutory grounds. See *Writers Guild of America, supra,* 609 F.2d at 362–65.

The reference was not made. The fact that GECCO went to the FCC would not have excused Peoria's failure to do so even if the district court had waited to hear the Commission's response to GECCO's petition before making its own decision. Anyone who wants a rule changed must give the FCC a chance to hear *his* arguments. See 47 U.S.C. § 405. GECCO's submission to the FCC was skimpy. The Cable Television Bureau may have shared our skepticism

that GECCO really wanted the rule lifted. It might have made a difference to the Bureau's consideration if it had had before it not just a private company but a city, offering reasons which the Bureau might have found persuasive why the city should be allowed to collect the revenues it had bargained for in the franchise agreement. Moreover, Rule 76.31 requires, as an express condition of waiver—even to the extent of allowing a 5 percent fee, and *a fortiori* it would seem for a 10 percent fee—a showing "by the franchising authority that [the higher fee] is appropriate in light of the planned local regulatory program." The Bureau held that GECCO had failed to make this showing; the absence from the proceeding of "the franchising authority" may have played a part in this decision. And GECCO did not challenge the validity of the rule, but just asked that it be waived. Peoria challenges validity as well as application, and the FCC is entitled to pass on that challenge in the first instance.

■■■ All this assumes that the FCC would have entertained such a challenge. Though it would not have accepted a petition for reconsideration as such, because the time for filing such a petition expired long ago, see 47 C.F.R. § 1.429(d), Peoria could have gotten the same relief either by seeking a declaration of its rights under 47 C.F.R. § 1.2, or by filing a petition to repeal Rule 76.31, as it could have done, without limit of time, under 47 C.F.R. § 1.401(a). Moreover, counsel for the Commission advises us that the Commission will, if requested, consider in a waiver proceeding the validity of the rule—and on constitutional as well as statutory grounds. So all Peoria had to do was file a petition for waiver under 47 C.F.R. § 1.3 or 47 C.F.R. § 76.7(a), as GECCO had done, to get a ruling on the current validity of Rule 76.31.

Peoria did none of these things, and it cannot excuse its inaction by arguing that resort to the Commission would have been futile. Rule 76.31 was promulgated ten years ago. Much has changed since in the dynamic world of cable television. It cannot be assumed that the Commission would

be deaf to appeals to change or waive the rule. And it must be remembered that the Commission, unlike the federal district court in Peoria, is deeply involved on a continuing basis in the regulation of this industry. However the Commission might respond in an appropriate proceeding to the City of Peoria's request to be free from the restrictions of Rule 76.31, its response could be of great assistance to a court asked to determine the rule's validity.

■ But it is not too late for Peoria. On remand the district court should stay the litigation to enable the city to go to the FCC for the relief it seeks. To assist the parties and the district court on remand, we shall venture the suggestion that any order the FCC issues in the proceeding brought by Peoria will be reviewable in whatever court of appeals there is jurisdiction and venue to review such an order directly under 28 U.S.C. §§ 2342(1), 2343, and 47 U.S.C. §§ 402(a), (b), rather than in the court below. Cf. *Far East Conf. v. United States,* 342 U.S. 570, 577, 72 S.Ct. 492, 495, 96 L.Ed. 576 (1952); 3 Davis, Administrative Law Treatise 3 and n. 1 (1958). We note that *Functional Music, Inc. v. FCC,* 274 F.2d 543, 546 (D.C.Cir.1958), holds that on judicial review of an order denying a waiver of a rule the court of appeals will also review the validity of the rule if asked to do so, notwithstanding the literal terms of 47 U.S.C. § 405.

The procedure we have outlined will eliminate a second tier of judicial review of agency action (the district court). This will serve both the policy of the statutes that vest exclusive jurisdiction to review FCC orders in the courts of appeals and the considerations of simplicity and expedition that underlie that policy, see H.R.Rep.No. 2122, 81st Cong., 2d Sess. 4 (1950); *Rockford League of Women Voters v. United States Nuclear Regulatory Comm'n,* 679 F.2d 1218, 1221 (7th Cir. 1982). After the validity and application of the rule are finally determined by this route, the district court suit can resume and any issues that remain can be disposed of then.

Nothing in *Regents of the University System of Georgia v. Carroll,* 338 U.S. 586, 70 S.Ct. 370, 94 L.Ed. 363 (1950), heavily relied on by Peoria, is inconsistent with this procedure. A state court awarded damages for breach of a contract that the FCC had ordered the defendant to repudiate, and the issue before the Supreme Court was whether such an award was precluded by the Federal Communications Act. The Court held it was not. *Regents of New Mexico College of Agriculture & Mechanical Arts v. Albuquerque Broadcasting Co.,* 158 F.2d 900 (10th Cir. 1947), is a similar case. In neither case were the validity and application of an FCC order drawn in question. Here they were, and the FCC is entitled to pass on the question before the courts do.

REVERSED AND REMANDED.