No. 39,679

STANOLIND OIL AND GAS COMPANY, a Corporation, *Appellant,* v.
CITIES SERVICE GAS COMPANY, a Corporation, *Appellee.*

(284 P. 2d 608)

Opinion filed June 11, 1955.

*George C. Spradling,* of Wichita, and *John F. Jones,* of Tulsa, Oklahoma, argued the cause, and *Harry T. Coffman,* of Lyndon, was with them on the briefs for the appellant.

*Joe Rolston,* of Oklahoma City, Oklahoma, and *Alex Hotchkiss,* of Lyndon, argued the cause, and *O. R. Stites,* of Oklahoma City, Oklahoma, was with them on the briefs for the appellee.

The opinion of the court was delivered by

PRICE, J.: This is an action for the recovery of money claimed to be due on the purchase price of a gas pipeline gathering system sold by plaintiff, Stanolind Oil and Gas Company, a corporation, to defendant, Cities Service Gas Company, a corporation, hereinafter referred to as Stanolind and Cities, respectively.

Cities' demurrer to the petition, as supplemented by a stipulation of facts entered into by the parties, on the ground that pleading does not state facts sufficient in law to constitute a cause of action, was sustained, and Stanolind has appealed.

At the outset it should be stated that due to the nature of the case, the written instruments involved, and the question presented, the court is well aware of the fact that its opinion will not be in the nature of a discussion of any particular legal principle, and that what is said will be of interest only to the parties themselves. The action concerns only the construction and interpretation of the three written contracts involved.

Stanolind is the owner of a plant for the processing and extraction of gasoline and other liquid hydrocarbons from raw gas. The plant

is referred to as Stano and is located in Grant County. Stanolind also owned a gas pipeline gathering system in Grant, Morton, Stanton and Stevens Counties, in what is known as the Kansas-Hugoton gas field. This gathering system cost in excess of $4,500,000, and was the sole source of supply for gas at Stano. In order to supply Stano with natural gas through its gathering system Stanolind had acquired oil and gas leases on large tracts of land in the area.

Cities, a gas company, was and is engaged in the business of purchasing and transporting natural gas for resale for ultimate public consumption. It desired to obtain additional quantities of natural gas. The gas from Stanolind's plant remaining after the extraction therefrom of gasoline and other liquid hydrocarbons was suitable for Cities' purposes. Stanolind, in order to operate its plant, was required to find a market for the residue gas. It also desired to sell its gas pipeline gathering system.

Accordingly, Stanolind and Cities entered into an agreement whereby Stanolind agreed to sell its gas and also its gathering system to Cities, and Cities agreed to buy the same, and on June 23, 1950, the parties entered into the three written contracts in question.

The first of these instruments to be considered is the Bill of Sale for the gathering system. By its provisions Cities purchased the same for an indeterminate price, that is, Cities was to pay Stanolind the purchase price in monthly installments measured at the rate of six-tenths cent per MCF for all gas purchased by Cities from Stanolind under the terms of a Gas Purchase Contract until June 23, 1961. The total of the installments was to constitute full and complete payment for the gathering system, irrespective of whether the amount actually paid was more or less than the original cost thereof to Stanolind.

By the provisions of the Gas Purchase Contract Stanolind agreed to sell and Cities agreed to purchase Stanolind's gas from the acreage in question for a stipulated price per MCF, with which we are not concerned. Under this contract Stanolind was given the right to process, in accordance with the terms of a Gas Processing Agreement, at its Stano plant, all gas delivered into the gathering system.

In other words, under the three written instruments in question Stanolind sold its raw gas and gathering system to Cities. Cities in turn transported the gas through the gathering system to the Stano plant, at which point it would be delivered to Stanolind. Stanolind

then processed such gas as it desired and then redelivered to Cities at the outlet of the Stano plant all of the residue gas remaining from the raw gas processed in the plant.

Under the Gas Purchase Contract the point of delivery was at the wellheads, and between June 23, 1950, and September 22, 1953, Stanolind delivered to Cities 136,703,574 MCF of gas. That volume multiplied by six-tenths cent per MCF equals $820,221.40, which amount Stanolind contends should have been paid to it by Cities during that period on the purchase price of the gathering system. However, during that period Cities paid only $802,432.48, the difference in these figures being $17,788.92, the amount for which this action was brought. This difference, at the rate of six-tenths cent per MCF, represents 2,964,825 MCF of gas, and Cities contends that the latter amount of gas represents gas retained by Stanolind in liquid hydrocarbon form at the Stano plant from gas delivered into the gathering system under the Gas Purchase Contract from wells on leases owned by Stanolind, that Cities did not purchase this amount of gas, and that the same should not be included in determining the amount of monthly installments.

There is no dispute between the parties as to the correctness of any of the foregoing figures or amounts, and, in fact, the parties stipulated as follows:

"13. The sole controversy between the parties is whether the gas retained in liquid hydrocarbon form at plaintiff's plant from gas delivered from Areas 'A' and 'B' under the Gas Purchase Contract was gas purchased under said contract. The determination of said controversy depends upon the proper and true construction and interpretation of the instruments involved in this litigation. If defendant did not purchase said gas under the Gas Purchase Contract, then defendant's deductions of the same before determining the installments due on the purchase price of the gathering system were correct. If, on the other hand, defendant did purchase said gas under the Gas Purchase Contract, then said gas should have been included in determining the installments due, under the Bill of Sale, on the purchase price of the gathering system, in which event, plaintiff is entitled to judgment against defendant in the amount of $17,788.92, with interest, and costs as prayed for by it in its petition."

In other words, if Cities purchased *all* of the gas delivered to it by Stanolind then Cities had no right to make the mentioned deductions in the monthly installments on the purchase price of the gathering system. If, on the other hand, Cities did *not* purchase *all* of such gas its deductions were proper.

In support of its position, Cities contends that by the language of the Gas Purchase Contract Stanolind excepted and reserved from

the scope thereof all of the liquid and liquefiable hydrocarbons contained in and removed in its Stano plant from the gas produced in the area in question, and therefore the quantity of gas represented by the amount of such hydrocarbons so extracted was never purchased by Cities but was at all times retained and owned by Stanolind.

That, in substance, is the view taken by the trial court in a comprehensive memorandum opinion filed at the time Cities' demurrer was sustained.

To set out in detail the various provisions of the Gas Purchase Contract and the Gas Processing Agreement would serve no useful purpose and would only lengthen unnecessarily this opinion. In some respects the language employed in these instruments may not be said to be a model of clarity. However, after a painstaking study of all of the provisions of the three instruments in question and of the stipulation of facts entered into, the court is of the opinion that Cities' demurrer was improperly sustained.

As we read the contracts and stipulation, the whole matter simply narrows down to this:

Stanolind was the owner of a pipeline gathering system in an area in which it held extensive oil and gas leases. It also owned the processing plant referred to at which it processed and extracted gasoline and other liquefiable hydrocarbons contained in raw gas. Cities purchased the gathering system and the purchase price was to be paid in monthly installments under the formula heretofore mentioned, based upon the amount of gas purchased by Cities from Stanolind under the Gas Purchase Contract. This contract reserved to Stanolind the right to process and extract gasoline and other liquefiable hydrocarbons from the raw gas thus sold by Stanolind to Cities, in accordance with the provisions of the Gas Processing Agreement. This last-mentioned instrument provided that, subject to the reservation to Stanolind with respect to the liquid and liquefiable hydrocarbons, Cities at all times was the owner of all the gas delivered by Cities to Stanolind at the latter's processing plant. It further provided that Stanolind was to pay Cities for the gas retained as fluids at the current monthly price. It also recites an assignment by Cities to Stanolind of title to the liquids extracted by Stanolind at the processing plant from all of the gas delivered to the plant by Cities. If the contracts in question, which were executed simultaneously, are to be construed as Cities contends, the provisions

just referred to would be meaningless. Taking the contracts and construing them as a whole, it seems clear that the "exceptions and reservations" in question mean that Stanolind reserved the right to process the gas that it sold to Cities. From the over-all picture and taking all of the provisions of the instruments into consideration, it is clear that the entire arrangement was one whereby Stanolind sold its gathering system to Cities, Cities purchased all gas delivered to it by Stanolind at the well-heads, and then in turn transported the raw gas to Stanolind's processing plant, at which point Stanolind, under rights reserved to it in the contracts, processed and extracted gasoline and other liquefiable hydrocarbons from such quantity of gas as it desired, and for which it obligated itself to pay Cities, and then released to Cities such gas as remained, and which such residue gas was satisfactory for Cities' purposes.

In arriving at our conclusion we have neither overlooked nor ignored numerous contentions made by the parties, but feel that a discussion of them would add nothing to this opinion and is therefore unnecessary.

The order of the trial court in sustaining the demurrer is therefore reversed.

THIELE, J., dissents.