PAN AMERICAN PETROLEUM COR-
PORATION, Plaintiff,

v.

CITIES SERVICE GAS COMPANY,
Defendant.

Civ. A. No. W–1595.

United States District Court
D. Kansas.

Dec. 31, 1958.

W. W. Heard, John J. Jones, Tulsa, Okl., and George C. Spradling, of Lilleston, Spradling, Gott, Stallwitz & Hope, Wichita, Kan., for plaintiff, Pan American Petroleum Corp.

C. C. Mount, O. R. Stites, Joe Rolston, Oklahoma City, Okl., and Clayton Kline, of Doran, Kline, Cosgrove & Russell, Topeka, Kan., for defendant, Cities Service Gas Co.

HILL, Chief Judge.

This is an action for a declaratory judgment instituted by the plaintiff, Pan American Petroleum Corporation, against the defendant, Cities Service Gas Company. The suit was originally filed in the District Court of Seward County, Kansas, for the purpose of securing a declaratory judgment under Kan.G.S. 1949, 60–3127 to 60–3132c, inclusive. On June 25, 1958, the defendant removed the suit to this court under the authority of 28 U.S.C. § 1441(b), basing the removal on the ground that the action was one in which the federal courts have original jurisdiction in that it is founded on the Natural Gas Act, 15 U.S.C.A. § 717 et seq., a claim or right arising under an Act of Congress regulating commerce. Under 28 U.S.C. § 1337, the jurisdiction of this court was invoked by the defendant. The plaintiff filed its motion to remand. This is the motion at bar. Since both parties are Delaware corporations, federal jurisdiction on the basis of diversity is absent. The sole question presented is whether the plaintiff's petition discloses upon its face a controversy between the parties with reference to a right or immunity created by the laws of the United States.

Initially, what may this court consider in determining this issue? The applicable principles of law in deciding the removability of civil actions have been clearly stated, both by the Supreme Court and the Court of Appeals of this circuit. In Gully v. First National Bank, 1936, 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70, the court stated the following tests to be applied in determining whether a case arises "under the Constitution or laws of the United States":

"To bring a case within the statute, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action. * * * The right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another * * *. A genuine and present controversy, not merely a possible or conjectural one, must exist with reference thereto * * * and the controversy must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal * * *. Indeed, the complaint itself will not avail as a basis of jurisdiction in so far as it goes beyond a statement of the plaintiff's cause of action and anticipates or replies to a probable defense * * *."

Accord, Andersen v. Bingham & G. Ry. Co., 10 Cir., 1948, 169 F.2d 328, 330, 14 A.L.R.2d 987; Regents of New Mexico College of Agriculture & Mechanic Arts v. Albuquerque Broadcasting Co., 10 Cir., 1947, 158 F.2d 900, 907.

These tests of federal jurisdiction for cases arising under the laws of the United States have been enumerated in the following fashion: (1) it should be kept in mind that the federal courts are courts of limited jurisdiction; (2) the right claimed must be one which will succeed on one construction of the laws of the United States but will fail on another; (3) there must be a necessity for construction of a federal statute or statutes and a real and genuine dispute or controversy between the parties as to the meaning and effect of a federal law asserted to be involved; (4) the asserted federal question must be real, substantial, and meritorious, not frivolous or a well-settled question foreclosed by previous court decisions; (5) the right itself must be federal in its nature and not merely in its source or origin; (6)

presentation of a federal question must be determined from the plaintiff's own statement of his cause of action, of which the claimed federal right must be an essential element; and (7) matters pleaded by the plaintiff in anticipation or avoidance of defenses, or matters appearing in such pleadings subsequent to plaintiff's complaint as defendant's answer or petition for removal, are entirely immaterial and cannot be considered in determining whether a federal question is presented. Annotation, What actions arise under the laws and treaties of the United States so as to vest jurisdiction of Federal Courts, 14 A.L.R.2d 992, 1002–1003 (1950). In order to decide the issue presented, it is clear that we must analyze the contents of the plaintiff's petition alone, unaided by any matters pleaded in anticipation or avoidance of defenses to be alleged by the defendant.

From the petition, it appears that the plaintiff is an independent producer of oil and gas owning oil and gas leases in the Hugoton Field in southwestern Kansas. The defendant is in the business of transporting and selling natural gas for resale for ultimate consumption. On June 23, 1950, these parties entered into a twenty-year gas sales contract for the purchase and sale of natural gas. The contract price for the gas was 8.4 cents per Mcf measured at 16.4 pounds per square inch absolute (psia) at a temperature of 60° Fahrenheit. The contract provided that it was subject to all valid laws and lawful orders of all regulatory bodies having jurisdiction of the parties.

Subsequently, the State Corporation Commission of Kansas prescribed a minimum wellhead price of 11¢ per Mcf measured at 14.65 (psia) at 60° Fahrenheit, which order became effective on January 1, 1954. On July 16, 1954, the Federal Power Commission required all independent producers, including the plaintiff, to file with the Commission rate schedules. On November 16, 1954, the plaintiff filed its schedules setting out the 11¢ per Mcf price as established by the Corporation Commission of the State

of Kansas. And on March 2, 1955, the Federal Power Commission accepted the filed rate price effective June 7, 1954. To these orders, the plaintiff did not object, nor did it invoke section 19(b) of the Natural Gas Act to prevent the 11¢ rate from becoming effective. In fact, it paid the new price without protest.

On March 22, 1954, the defendant filed its request for increased rates on gas sold by it to ultimate consumers. In support of these increased rates, it relied upon the 11¢ per Mcf price. The increased rates were allowed by the Federal Power Commission. Then on July 1, 1957, the plaintiff filed with the Federal Power Commission a notice that effective that date, the applicable price would be 11.0715¢ per Mcf. This was in conformity with the tax reimbursement clause of the Kansas severance tax act, Laws 1957, c. 516. To this increase, the defendant not only did not object, but requested as it secured a tax advantage. For all gas delivered from July 1, to November 23, 1957, the defendant paid the sum of 11.0715¢ per Mcf. But once the severance tax law was declared unconstitutional, the plaintiff no longer paid this .0715¢ increase.

As aforementioned, the defendant paid the sum of 11¢ per Mcf from January 1, 1954, to November 23, 1957, without protest. On November 24, 1957, the defendant tendered to the plaintiff the original 8.4¢ per Mcf rate, and on January 28, 1958, the defendant demanded payment from the plaintiff for the difference between the payments the defendant had made to the plaintiff and the payments which it should have made for such gas under the new contract rate.

During this period, the plaintiff assigned some of the leases subject to the original contract to 125 persons and transferred the proceeds of the gas sales to such assignees which was accomplished with full knowledge of the defendant. The plaintiff relied on the 11¢ price, drilled new wells and reworked others. As a result of these acts, agreements, and conduct, the plaintiff contends that the contract was modified with the de-

fendant's acquiescence and is estopped to deny that the contract was modified. These are the facts, circumstances, and contentions as disclosed by the plaintiff's petition.

Section 1441(b) authorized the removal to the United States Court of any civil action of which the district court has original jurisdiction founded on a claim or right arising under the laws of the United States. Section 1337 provides that the district courts shall have original jurisdiction of any civil action arising under any Act of Congress regulating commerce or protecting trade or commerce. And Section 1331 gives federal courts original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum of $3,000, exclusive of interest and costs, and arises under the laws of the United States. Admittedly, the jurisdictional amount is present, and the Natural Gas Act is a law of Congress regulating Commerce. 15 U.S.C.A. § 717 et seq. The Act regulates the transportation, sale and distribution of natural gas in interstate commerce. If the petition discloses a case or controversy arising under the Natural Gas Act, which is an essential element of the plaintiff's cause of action, and that the plaintiff's right will be supported if the Natural Gas Act is given one construction and defeated if it is given another, then the case was properly removed. If not, then the plaintiff's motion to remand should be sustained.

In the event that the case presents a close question as to whether the federal court has jurisdiction, what test should be applied in deciding whether to retain the suit, or remand it to the state court. Some courts have held that on a motion to remand, every doubt should be resolved against remand. Bon v. Midwest Refining Co., D.C.D.Wyo.1929, 30 F.2d 410, 413; affirmed Henderson v. Midwest Refining Co., 10 Cir., 1930, 43 F.2d 23. Cf. Bradley v. Halliburton Oil Well Cementing Co., D.C.W.D.Okl.1951, 100 F. Supp. 913, 916. Other federal courts have held that all doubts are to be resolved against the removal of the cause.

Kansas v. Bradley, C.C.D.Kan.1885, 26 F. 289; Winsor v. United Air Lines, D.C.D.Del.1858, 159 F.Supp. 856; Aetna Ins. Co. v. City of Malden, D.C.E.D.Mo. 1952, 102 F.Supp. 126; John Hancock Mutual Life Ins. Co. v. United Office & Professional Workers of America, D.C. D.N.J.1950, 93 F.Supp. 296. This rule is based on the presumption against jurisdiction as the powers of the federal courts are of a limited nature. Such being the case, the jurisdiction of federal courts is to be strictly construed. Shamrock Oil & Gas Co. v. Sheets, 1941, 313 U.S. 100, 108, 61 S.Ct. 868, 85 L.Ed. 1214; Healy v. Ratta, 1934, 292 U.S. 263, 270, 54 S.Ct. 700, 78 L.Ed. 1248.

Another rule was formulated in Boatmen's Bank of St. Louis v. Fritzlen, 8 Cir., 1905, 135 F. 650, 655, which case originated in this district. With respect to the applicable test to apply in determining whether the federal court had jurisdiction of a removal suit, the court stated:

"* * * the true rule is that motions to remand and for removal should be decided, not by the existence of doubts, but by the preponderance of the facts, the law, and the reasons which condition them, in view of the fact that the right to invoke the jurisdiction of the federal court is a valuable constitutional right, and an erroneous affirmance of the claim to that right may be corrected by the Supreme Court upon a certificate of the question of jurisdiction, while an erroneous denial of the claim is remediless."

See Chicago, R. I. & Pacific Ry. Co. v. Kay, D.C.D.Iowa 1952, 107 F.Supp. 895, 906; Cyclopedia of Federal Procedure, Vol. 2, § 3.135, pp. 398–399 (3rd Ed. 1951). Before the application of the test to be used in deciding whether this court has jurisdiction of this removal proceeding, let us examine the nature of the present action.

The original contract entered into between the parties for the sale and purchase of dry natural gas was executed in this state and was to be performed

here. This court must apply the substantive law of the state in which it sits. Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. The Kansas Supreme Court has twice construed this agreement to be a Kansas contract. See Stanolind Oil & Gas Co. v. Cities Service Gas Co., 1957, 181 Kan. 526, 313 P.2d 279; Stanolind Oil & Gas Co. v. Cities Service Gas Co., 1955, 178 Kan. 202, 284 P.2d 608.

■ But the original agreement is not the source of the instant controversy. The question centers on the 11¢ modification entered by the State Corporation and filed with the Federal Power Commission by the plaintiff—all without objection from the defendant. First with respect to the 11¢ order entered by the Kansas Corporation Commission, it is clear that under the Natural Gas Act, the states have no power to regulate the sale of natural gas in interstate commerce by independent natural gas producers. Cities Service Gas Co. v. State Corporation Commission of Kansas, 1958, 355 U.S. 391, 78 S.Ct. 381, 2 L.Ed. 2d 355; Natural Gas Pipeline Co. v. Panoma Corporation, 1955, 349 U.S. 44, 75 S.Ct. 576, 99 L.Ed. 866; Phillips Petroleum Co. v. State of Wisconsin, 1954, 347 U.S. 672, 74 S.Ct. 794, 98 L.Ed. 1035. By the very terms of the contract, the Kansas Corporation Commission, as a regulatory body having no jurisdiction over the parties, did not have the power to modify the terms of the original agreement. In itself, the State Corporation Commission order was ineffectual.

■ Also, the filing of a unilateral contract change with the Federal Power Commission is not sufficient to change Pan American's contract with Cities Service. This was settled by the Supreme Court in United Gas Pipe Line Co. v. Mobile Gas Corporation, 1956, 350 U.S. 332, 76 S.Ct. 373, 100 L.Ed. 373. If the contract in question was a "going" rate agreement, then the Federal Power Commission could change the price as the parties would have so agreed by contract. United Gas Pipe Line Company v. Memphis Light, Gas and Water Division, 1958, 358 U.S. 103, 79 S.Ct. 194, 3 L.Ed.2d 153, 358 U.S. 942, 79 S.Ct. 344, 3 L.Ed.2d 350. But the contract in question is not of such a nature. It is one of a fixed price as was construed in the Mobile decision. The Commission has the power under Section 5(a) of the Natural Gas Act to change the contract rate upon finding that the contract rate is unreasonable or unjust so that it would have an adverse effect on the public interest. Federal Power Commission v. Sierra Pacific Power Company, 1956, 350 U.S. 348, 353, 76 S.Ct. 368, 100 L.Ed. 388. No such action was taken by the Commission in the present case.

■ In view of these decisions, it is clear that there is no federal question presented relative to the order of the Kansas Corporation Commission raising the contract price to 11¢, and the unilateral rate change by the Federal Power Commission. Since the law is settled, there is no federal question. This rule was aptly stated in Regents of New Mexico v. Albuquerque Broadcasting Co., 10 Cir., 1947, 158 F.2d 900, 907, in which the court noted:

"It is well settled that the lack of substantiality in a Federal question may appear, either because it is obviously without merit, or because its unsoundness so clearly results from previous decisions of the Supreme Court as to foreclose the subject, or, as is sometimes stated, there must be a Federal question, not in mere form but in substance, and not in mere assertion but in essence and effect. The reason is plain. If the asserted Federal right is clearly and obviously without merit, the case cannot possibly arise under Federal law."

To escape the effect of this rule, the defendant contends that this court has original jurisdiction since the question presented is whether the 8.4¢ contract rate or 11¢ "tariff" rate as scheduled with the Commission is the effective rate. The argument is predicated on the theory that the rate filed is to be treated as though it were a statute binding upon

the parties before the court, and as such a tariff, the construction of its effect presents a federal question. In support of this contention, the defendant cites Bernstein Bros. Pipe & Machinery Co. v. Denver & Rio Grand W. Rd. Co., 10 Cir., 1951, 193 F.2d 441, 444. The question involved in that decision was whether one tariff rate or another applied to the transportation of portable heating units. With respect to the proper rate to be charged, the Court noted:

"The amount of a transportation charge for goods shipped in interstate commerce is not a matter of private contract between the parties. The shipper and carrier are alike bound by the established and published tariff rates. * * * No contract of the carrier can reduce the amount legally payable or release from liability, a shipper who has assumed an obligation to pay the charges. Nor will any act or omission of the carrier estop or preclude it from enforcing payment of the full amount under the tariff by a person liable therefor."

Under the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq., there is but one rate; and no room for private contracts. Is the Natural Gas Act of the same nature? In United Gas Pipe Line Co. v. Mobile Gas Corporation, 1956, 350 U.S. 332, 76 S.Ct. 373, 378, 100 L.Ed. 373, the sole question presented was whether under the Natural Gas Act, a regulated gas company furnishing gas to a distributing company could change the contract rate simply by filing a new rate schedule with the Federal Power Commission, when objected to by the distributing company. Initially, the court noted the difference between the Natural Gas Act and the Interstate Commerce Act, by stating:

"In construing the Act, we should bear in mind that it evinces no purpose to abrogate private rate contracts as such. To the contrary, by requiring contracts to be filed with the Commission, the Act expressly recognizes that rates to particular customers may be set by individual contracts. In this respect, the Act is in marked contrast to the Interstate Commerce Act, which in effect precludes private rate agreements by its requirement that the rate to all shippers be uniform, a requirement which made unnecessary any provision for filing contracts."

Then the court held that one party could not unilaterally change the terms of the original contract by filing a "rate schedule" under Section 4(d). The only effect of the Act is "a prohibition, not a grant of power." Section 4(d) "says only that a change *cannot* be made without the proper notice to the Commission; it does not say under what circumstances a change *can* be made."

The precise question is whether the original contract was modified. This alleged modification occurred as a result of circumstances which were independent of the provisions of the Natural Gas Act. These circumstances are questions of fact to be determined in order to declare what the present contract is. As stated by the Supreme Court in the Mobile case, " * * * the Act provides no 'procedure' either for making or changing rates; it provides only for *notice* to the Commission of the rates established by natural gas companies and for *review* by the Commission of those rates. The initial rate-making and rate-changing powers of natural gas companies remain undefined and unaffected by the Act."

The case of Skelly Oil Co. v. Phillips Petroleum Co., 1950, 339 U.S. 667, 70 S.Ct. 876, 879, 94 L.Ed. 1194, sheds some light on the issue herein presented. The Supreme Court in reversing the lower court held, that the attempted injection of a federal question as to the Natural Gas Act was merely an anticipatory defense and did not constitute an essential element of the plaintiff's cause of action. Federal jurisdiction was denied. In so holding, the court stated:

"If Phillips sought damages from petitioners or specific performance of their contracts, it could not bring suit in a United States District

Court on the theory that it was asserting a federal right. And for the simple reason that such a suit would 'arise' under the State law governing contracts."

In addition to the fact that the plaintiffs' cause of action was based on a contract, the court noted that since the trend was towards the contraction of the jurisdiction of the federal courts in cases "arising under * * * the Laws of the United States," the case should not be considered as one arising under federal law. In support of this statement, the court said:

"With exceptions not now relevant, Congress has narrowed the opportunities for entrance into federal courts, and this Court has been more careful than in earlier days in enforcing these jurisdictional limitations."

■ In this case, the defendant makes the same contentions as were made by the plaintiffs in the Phillips case; i. e., that the regulations promulgated by the Commission under the Natural Gas Act had the force and effect of federal law. The Supreme Court rejected this argument. Likewise, in the instant case, it is so rejected.

The Natural Gas Act imposes certain duties upon the plaintiff as an independent producer. It must file its rate schedules with the Federal Power Commission and conform with its procedures. But the source of the right of action of the plaintiff is the contract; or in the alternative, the conduct of the defendant in modifying the contract which conduct estops it from asserting its rights under the original agreement. See Andersen v. Bingham & Garfield Ry. Co., 10 Cir., 1948, 169 F.2d 328; 1950, 14 A.L.R. 2d 992.

Assuming that a contract may be modified through specific conduct or acquiescence, the defendant contends that the question of estoppel is in itself a federal question under the regulations of the Natural Gas Act, and its provisions under which they are issued. In support of this argument, it cites Sola Electric Co. v. Jefferson Electric Co., 1942, 317 U.S. 173, 63 S.Ct. 172, 173, 87 L.Ed. 165. It is true that the Court in the Sola case found the "doctrine of estoppel" to constitute a federal question as it was "in conflict with the Sherman Act's prohibition of price-fixing." The rationale of that opinion was that there can be no valid estoppel to deny the validity of a patent if the estoppel would result in a contravention of federal antitrust laws. The court concluded its opinion with the statement that "rules of estoppel which would fasten upon the public as well as the petitioner the burden of an agreement in violation of the Sherman Act must yield to the Act's declaration that such agreements are unlawful, and to the public policy of the Act which in the public interest precludes the enforcement of such unlawful agreements." As the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1–7, 15 note renders unlawful all agreements and private contracts which in any way, unreasonably restrain competition in interstate commerce, such contracts are in violation of federal law. Therefore, the formation of such agreements through the application of the doctrine of estoppel presents a federal question.

If the rate schedule filed in the present suit was analogous to the Interstate Commerce Act, then Cities Service's contention is proper. See United States v. Western Pacific Rd. Co., 1956, 352 U.S. 59, 76, 77 S.Ct. 161, 1 L.Ed.2d 126. But in the construction of rate schedules filed with the Federal Power Commission, under the Natural Gas Act, this is not so. The Act specifically provides for the approval of private contracts, which rates, by their very origin, will vary. There is no published rate, or tariff. The only issue is whether the original contract, or a new agreement created through conduct and acquiescence, is in effect. The doctrine of estoppel in no fashion precludes the effectiveness of any federal statute.

The only limitation on the right of the parties to contract for the purchase and

sale of natural gas is Section (5) (a) which allows the Federal Power Commission to declare such contracts unjust and unreasonable if violative of public interest. There is no such element in the present case. The sole question is whether the parties are bound by the terms of the original agreement, or have by their conduct modified the first agreement, are operating under the modified contract.

 A suit to enforce the terms of a contract, as allegedly modified by the acts and conduct of the parties, is not one arising under the laws of the United States within the meaning of the jurisdictional statutes. Where it appears from the complaint that the plaintiff does not assert a claim or right arising out of federal law, that the alleged federal claim is not an essential element of the plaintiff's cause of action, that the federal law allegedly involved is merely colorable, and that it is immaterial as to the effect of the construction of the Natural Gas Act upon such claim, the suit is not one arising under the laws of the United States.

The allegations of the petition charging the defendant with the modification of the contract merely tenders an issue of fact of whether the agreement has been so modified. The petition did not present any issue or controversy in respect to the validity, construction, or effect of the Natural Gas Act. It did not set forth any right or immunity which would be supported if the Act be given one construction or effect and defeated if given another. The right or immunity upon which the suit is predicated is the right of the parties to contract with each other. This is not a federal right.

In conclusion, from an examination of the plaintiff's petition, unaided by the petition for removal or matters pleaded in anticipation or avoidance of defenses, it appears that the right upon which the cause of action is founded is not federal in nature, but is grounded on the premise of the formation of a modified contract through the acts, conduct and acquiescence of the parties in this action. This right, or cause of action, will nei-

ther succeed or fail on the construction of a federal statute, or regulation promulgated pursuant to such statute. Despite the existence of such federal statutes, the suit is based on the theory that a new agreement has been entered into by the parties.

In view of the foregoing this case be, and it hereby is remanded to the District Court of Seward County, Kansas, the defendant to pay all of the costs incurred in this court by reason of the removal.